589 A.2d 1133

COMMONWEALTH of Pennsylvania

v.

Craig S. CARTER, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 22, 1991.

Filed April 16, 1991.

Petition for Allowance of Appeal
Denied Sept. 9, 1991.

Shelley Stark, Public Defender, Pittsburgh, for appellant.

Claire C. Capristo, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before ROWLEY, President Judge, and DEL SOLE and HOFFMAN, JJ.

DEL SOLE, Judge:

Appellant, Craig S. Carter was found guilty after jury trial of possession of a controlled substance namely heroin, and possession with an intent to deliver. The record reveals that Officers Provident and Wilson of the Narcotics Division of Pittsburgh Police were conducting a surveillance of Appellant as he stood outside Moe's Bar in the Hazelwood/Glenwood section of Pittsburgh. They observed Appellant as he approached three different stopped automobiles outside of this bar which is in an area known for narcotics trafficking.

The Officers testified that Appellant walked up to the cars, engaged the occupants in a brief conversation, and then the cars drove away. Appellant was then observed removing an object from a black container in a vacant lot and returning to the street. Appellant then approached the same automobiles, which had returned to the area, and exchanged something with the occupants. Further, Appellant was observed entering the bar after approaching the stopped automobiles. Each detective observed Appellant engaging in this conduct with the occupants of three or four automobiles before he was arrested by the police. Detective Wilson subsequently retrieved the black container—a film cannister—from the vacant lot, and it was found to contain twelve yellow balloon packets of heroin.

Appellant raises two related issues for our review. Initially he claims that the lower court erred in qualifying the

two officers as experts and allowing them to testify on ultimate issues. Next, he argues that trial counsel was ineffective in failing to preserve for appellate review his objections to testimony from the two officers on the number of prior arrests by these officers which resulted in convictions. This testimony, which was admitted in the course of qualifying the officers as experts, it is argued, prejudiced Appellant.

Here, the Officers were offered as experts in order to elicit testimony on the street value of drugs, the habits of users, the quantity that would be purchased or possessed at one time, the usual dosage, signs of abuse, and whether the pattern of activity observed by the police officers was consistent with the usual pattern of narcotics transactions. Defense objections to their qualification was overruled, but the court held that their testimony would be somewhat limited. (N.T. 30, February 14–15, 1990), The court never specified the exact limitations of the testimony, instead the trial judge stated, "Some of them, [questions], I'll allow, but I'll have to hear each question as asked. We'll do it on a question-by-question basis. But generally I will deem him an expert." (N.T. 32. February 14–15, 1990). At no time did the court rule that any of the subjects raised in direct examination of the Officers was inappropriate for expert testimony.

The Officers in this case conducted the surveillance of the bar, found the narcotics, and arrested Appellant. They described Appellant's transactions with the stopped cars, and discussed the contents of the container filled with balloons of heroin. Officer Provident was then asked, based on his training and experience, if he had an opinion concerning what activity was transpiring. He answered that in his opinion he believed Appellant was "dealing narcotics." (N.T. 40–41, February 14–15, 1990).

We hold that this opinion was cumulative and prejudicial. The facts presented were easily assessed by an ordinary layperson, and in making the necessary inferences from these facts, the assistance of one claiming to possess

618.

special knowledge upon the subject was not required. Expert opinion evidence at this juncture encouraged the jurors to shift their focus from determining the credibility of the Officers' eye-witness testimony, and allowed them, instead, to defer to the Officers' expertise as narcotics detectives. *See Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988). Our supreme court has condemned such testimony as "an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment." *Commonwealth v. Seese*, 512 Pa. 439, 443–444, 517 A.2d 920 (1986).

It has long been established that expert opinion testimony is proper only where formation of an opinion on a subject requires knowledge, information, or skill beyond what is possessed by the ordinary juror. *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986). "Phenomena and situations which are matters of common knowledge, may not be made the subject for expert testimony." *Id.* at 442, 517 A.2d 920, *citing, Collins v. Zediker*, 421 Pa. 52, 53–56, 218 A.2d 776, 777–778 (1966). "Expert testimony is inadmissible when the matter can be described to the jury and the condition evaluated by them without the assistance of one claiming to possess special knowledge upon the subject." *Id., citing, Burton v. Horn and Hardart Baking Co.*, 371 Pa. 60, 88 A.2d 873, 63 A.L.R.2d 731 (1952).

While the Officers' expert opinion as to whether there was a drug transaction going on would have been proper had it been offered in a suppression hearing where the existence of probable cause to arrest Appellant might well depend on the Officer's expertise and knowledge of the way narcotics transactions usually occur, and the locality in which the transaction occurred, it was improper for the purposes here. The absurdity of admitting expert testimony as regards the inferences to be drawn from observing Appellant's activities can best be illustrated by the following direct examination of Officer Wilson:

Q. Based on your training and experience, in your opinion would the circumstance surrounding the seizure of this heroin here be consistent with indications of personal use by the defendant?

[Objection overruled]

A. My observation was the reason I'm saying this, observing the defendant going back and forth to the cars, finally seeing U.S. currency being handed to him and an item given to that person in that vehicle, which later was found to contain balloons, which was eventually found to contain heroin, would indicate that that defendant was selling heroin. (N.T. at 72, February 14–15, 1990)

The Officer's opinion is exclusively based on his own observations to which he had already testified before the jury. If the jury believed this testimony, they could conclude, based on common knowledge of what is happening when one person hands an object to another and in return receives U.S. currency, that a transaction had occurred. And then if they found credible the testimony that the person had previously retrieved the object from a container which is later found to contain heroin, they may conclude, using their experience with the ordinary affairs of life, that Appellant was selling heroin. No special knowledge or insight is required to reach this conclusion.

We have held that when an accused is found with a certain quantity of drugs, expert testimony may be offered by narcotics detectives concerning whether the facts surrounding the possession of the controlled substance were consistent with an intent to deliver rather than an intent to possess for personal use. *Commonwealth v. Ariondo,* 397 Pa.Super. 364, 580 A.2d 341 (1990); *Commonwealth v. Robinson,* 399 Pa.Super. 199, 582 A.2d 14 (1990). However, in these cases the police officers did not observe a transaction, but rather seized narcotics from the defendants in question, and then opined, based on the quantity of drugs seized and from other circumstances, such as the presence of drug paraphernalia, that the defendants intended to deliver the narcotics.

■ Therefore, in the case before us where a transaction was observed, the admission of expert testimony concerning the street value of the heroin, the quantities used by addicts, the signs of addiction, and all those areas covered in the Commonwealth's offer of proof in order to establish Appellant's intent to deliver, as well as the Officer's expert opinion that a drug transaction had taken place, was prejudicial error.

Because we have held that it was prejudicial error to qualify the Officers as experts for the purposes for which they testified, we need not decide if trial counsel was ineffective for failing to preserve the issue for appeal that the trial court erred in allowing the Officers to testify that all or almost all of their arrests which went to trial culminated in convictions.

We do hold, however, that such testimony was highly prejudicial, despite the court's limiting instructions concerning the use of this testimony. The prejudice from such testimony outweighs its materiality in establishing the Officers' expertise on such matters as their familiarity with the habits of users and distributors of heroin. Such qualification would be, perhaps, proper if conducted *in camera.* Despite the prosecution's assertions to the contrary, (N.T. at 23, February 14–15, 1990), this court knows of no authority requiring that such testimony be presented in order to establish the qualifications of Officers Provident and Watson. Rather, the more ordinary method of qualifying such expert witnesses, is to refer to their training in the area of narcotics and the amount of on-the-job experience they have obtained. *See, Commonwealth v. Riffert,* 379 Pa.Super. 1, 21, 549 A.2d 566 (1988).

Therefore, we reverse the judgment of sentence and remand for a new trial in accordance with this opinion.