653 A.2d 700

COMMONWEALTH of Pennsylvania, Appellee,

v.

Minguel MONTAVO, a/k/a Minguel Montano, Appellant.

Superior Court of Pennsylvania.

Submitted June 30, 1994.

Decided Jan. 10, 1995.

218

John H. Moore, Erie, for appellant.

William R. Cunningham, Dist. Atty., Erie, for Com., appellee.

Before POPOVICH, SAYLOR and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal from judgment of sentence entered in the Court of Common Pleas of Erie County, following appellant's conviction on charges of possession of cocaine with intent to deliver and criminal conspiracy. Herein, appellant, Minguel Montavo (a/k/a Minguel Montano), presents the following questions for our review: A) Whether the suppression court erred in refusing to grant appellant's motion to suppress physical evidence; and B) Whether the trial court erred in permitting the affiant, Anthony Bozich, to testify as to his opinion that the defendants were engaged in drug trafficking? Having reviewed the record and the parties' briefs, we agree with the lower court's disposition of appellant's suppression motion. However, we find that the lower court erred when it permitted Pennsylvania State Trooper Anthony Bozich to testify that, in his opinion, appellant and his co-defendant were engaged in drug trafficking. Accordingly, we reverse and remand for a new trial.

The relevant facts, as set forth by the trial court, are as follows:

[S]ometime in November of 1992, Pennsylvania State Trooper Anthony Bozich became aware that the individuals living at 2320 German Street, Erie, PA, were allegedly involved in the distribution of crack cocaine. Trooper Bozich learned the identities of the individuals residing at 2320 German, those persons being Miguel Montano, Francisco Heredia, Carmen Feliciano, and Ms. Feliciano's children. From then on, sporadic surveillance of Montano and Heredia was conducted. Montano and Heredia were seen meeting with various person for short periods of time on the street, in parking lots, and in apartment buildings. These meetings occurred in areas of the city which are known for drug trafficking.

On January 13, 1993, surveillance was again conducted on Montano and Heredia. The men were followed as they left the residence, and were seen at the following locations: Jethro's Club Steakhouse, Twenty Grand Cafe, 16th and Holland Streets, Country Fair at 26th and East Avenue,

and the 16th Street projects. Again, [Montano and Heredia] were seen at these locations for relatively short periods of time. Later that evening, the Strike Force returned to the residence and retrieved two bags of garbage from the front of the residence, at curbside. During trial, Heredia indicated that he took the garbage out that night. A search of the garbage produced rectangular-shaped tape (which was testified as being consistent with the packaging of large amounts of cocaine), and sandwich baggies with the corners cut off. A field test was conducted on the baggie corners, and the results provided the basis for a search warrant. The following day, January 14, a search warrant was executed. Upon arriving at the residence, the Strike Force observed Montano and Heredia leaving the residence. After approaching [Montano and Heredia] and advising them of the search warrant, all parties entered the residence, whereupon they encountered Ms. Feliciano and the children. The search of the home and persons therein yielded the following:

1. Two pagers with a telephone area code of 215.
2. Identification cards of Carmen Feliciano.
3. Paper with the name Heredia on it.
4. An application for a duplicate driver's license in the name of Heredia.
5. An express mail receipt.
6. Certificate of title of 1981 Toyota Coupe in the name of Heredia.
7. Social Security card of Miguel Montano.
8. A digital scale which was uncovered from the basement floor.
9. Two vibrating digital beepers (GTE Motorola beepers).
10. An address book.
11. A photo identification depicting Heredia; however, in the name of Carlos Santos.
12. Money transfer receipts.
13. $1,460.00 from Montano's bedroom.

14. $300.00 from a pair of men's pants.

15. Glad sandwich baggies with the corners removed in some.

From a shed which was located within the premises' curtilage, two mason jars of cocaine were recovered. Trooper Mark Schau testified that upon arriving at the residence and executing the warrant, there was only one set of footprints going from the house to the shed and back (there was snow on the ground at this time). The only other notes of importance are that during the search, Heredia gave the Strike Force a false name when asked, and that [Montano and Heredia] were read their rights in both English and Spanish.

Trial Court Opinion, February 28, 1994, at 3–5.

Thereafter, appellant was charged with one count of possession of a controlled substance with the intent to deliver[1] and one count of criminal conspiracy.[2] A jury trial was held on September 21–23, 1993, resulting in a finding of guilt on both charges. Appellant was sentenced to a term of seven-to-ten-years imprisonment for possession with intent to deliver to be served concurrently to a term of five-to-ten-years imprisonment for conspiracy. Post-trial motions were filed and denied. This timely appeal followed.

Appellant first contends that the trial court erred in denying his motion to suppress the physical evidence seized as a result of the search of the first floor of the 2320 German Street residence as there was not sufficient probable cause to support the search warrant.[3] We disagree.

It is well-settled that Pennsylvania has adopted the "totality of the circumstances" approach in determining whether a search warrant is supported by probable cause. *See Commonwealth v. Davis*, 331 Pa.Super. 285, 293, 480 A.2d

1. 35 Pa.S. § 780–113(a)(30).

2. 18 Pa.C.S. § 903.

3. We note that the search warrant covered the first floor of the 2320 German Street residence as well as the curtilage and outbuildings of that address.

1035, 1039 (1984). *See also Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). With this standard of review in mind, we will assess appellant's claim.

After a careful review of all of the information contained in the affidavit of probable cause, we find that the affidavit was sufficient to support the warrant allowing a search of 2320 German Street. Appellant resided at 2320 German Street. The record demonstrates that there was information provided by several confidential informants indicating drug trafficking between 2320 German Street and 17th Street. In addition, an informant actually witnessed two sales of cocaine at 2320 German Street. During one of these sales, the informant received information that sales were regularly conducted at 2320 German Street and that there was a connection between the drug activity at 17th Street and the drug activity at 2320 German Street. While the information obtained from the confidential informants related to events occurring more than a month before the search warrant was requested, as the information indicates continuous drug activity, this passage of time becomes less significant. *See Commonwealth v. Ryan,* 300 Pa.Super. 156, 170, 446 A.2d 277, 284 (1982) ("Properly recited facts indicating activity of a protracted and continuous nature make the passage of time less significant") (citation omitted).

Moreover, the information from the confidential informants was corroborated by surveillance of the occupants of 2320 German Street on January 13, 1993, as well as the search of the contents of the garbage bag left in front of the German Street residence. Specifically, the occupants of 2320 German Street were seen proceeding to the 17th Street residence and returning to the 2320 German Street residence several times. In addition, they were seen in a bar where drug trafficking commonly occurs. Finally and most importantly, the garbage bag belonging to the occupants of 2320 German Street contained traces of cocaine as well as drug packaging material consistent with the sale and distribution of cocaine. Since there was sufficient information in the affidavit of probable cause to support a search of the 2320 German Street resi-

dence, we find appellant's suppression claim to be without merit.

Appellant next contends that the trial court erred in allowing an expert witness for the Commonwealth to state his opinion that appellant was involved in drug trafficking. We agree with appellant and are convinced that Trooper Bozich should not have been allowed to testify concerning a matter which was beyond the scope of his qualification as an expert and which was not beyond the ken of lay jurors. Accordingly, we reverse and remand for a new trial because of the severely prejudicial effect of permitting the arresting officer to state expressly that he was convinced that appellant was involved in narcotics trafficking.

The record reveals that after Trooper Bozich recited his experience and training in narcotics investigation, the Commonwealth offered "Trooper Bozich as an expert witness in the packaging and/or distribution of crack cocaine ...". N.T., 9/22/93, p. 28. Defense counsel stipulated to the trooper's qualifications and stated, "As far as the packaging of cocaine, I have no problem with him testifying as an expert."[4] The Commonwealth then proceeded to ask Trooper Bozich a series of questions concerning an area known as 16th and Division, also known as Lake City Dwellings, Twenty Grand Cafe and Jethro's Steakhouse. Trooper Bozich testified that all three areas were known to be areas with a high volume of drug trafficking. N.T., 9/22/93, pp. 32–33. Trooper Bozich also testified that on the five or six occasions which he conducted surveillance of appellant's residence during November and December of 1992, he witnessed appellant and one of his co-defendants travel to those narcotics-trafficking locations on several occasions. N.T., 9/22/93, pp. 32, 34. The trooper stated that appellant and his co-defendant would park and meet with individuals on the street, in the yards or inside an apartment at Lake City Dwellings. N.T., 9/22/93, p. 34.

4. We note that appellant was tried with his two co-defendants, and all three counsel concurred in stipulating to Trooper Bozich's qualifications.

After his brief testimony concerning his personal surveillance of appellant and his co-defendant, Trooper Bozich was asked the following question by the prosecutor: "Based upon your observations at the Twenty Grand Cafe, Jethro's Steakhouse and/or 16th or 17th and Division and also based upon your experience in undercover narcotics work, were you able to formulate an opinion as to what their activities were?" N.T., 9/22/93, pp. 34–35. Defense counsel immediately objected but was overruled. The following exchange then occurred:

The prosecution: In case you don't remember the question, let me back up. Based upon your visual observations of [appellant] and [his co-defendant] at location that your told the jury that you observed them, based upon the fact that you indicated that all of those locations, Jethro's, Twenty Grand Cafe, 16th and 17th and Division are known drug trafficking areas, were you able to formulate an opinion as to whether or not the defendants Montano and Heredia's activities during the months of December and November of '92 were inconsistent or consistent with drug trafficking?

Trooper Bozich: Mostly because the only places we ever saw them go were those places, it was my opinion they were probably involved in the trafficking of drugs.

N.T., 9/22/93, pp. 37–38.

Defense counsel again objected to the testimony, and the trial court instructed the jury as follows:

The court: I'm going to caution the jury, it's his opinion. He saw no drug trafficking. He didn't witness any dealing or anything like that, he's just stating that this is his opinion. Now, whether or not you want to take that opinion into consideration because he's an expert witness in other things doesn't necessarily mean you have to, but I will tell you this, that in my final charge, I will tell you how to deal with an expert witness. So I have cautioned you now on this. He's just saying as far as he's concerned, it's consistent with drug trafficking. He cannot identify that these

people were actually trafficking in that, and that will be a case of final argument.

N.T., 9/22/93, p. 38.

Trooper Bozich subsequently testified on direct as an expert on the packaging, distribution and manufacture of cocaine and crack cocaine. He specifically testified that the amount of cocaine, the type of packaging materials and other paraphernalia seized at appellant's residence were consistent with drug distribution. Trooper Bozich also explained how crack cocaine is derived from powdered cocaine. No objections were lodged against this expert testimony.[5]

Eventually, on cross-examination, Trooper Bozich testified that appellant and his co-defendant would generally stay at the locations for only short periods of time. N.T., 9/22/93, pp. 89, 91. Further, on cross-examination, he testified that he never witnessed appellant or his co-defendant give anything to anyone at those locations and, likewise, never saw them receive anything from anyone at those locations. N.T., 9/22/93, pp. 91–92.

It has long been established that expert opinion testimony is proper only where the formation of an opinion on the subject *sub judice* requires knowledge, information or skill beyond what is possessed by the ordinary juror. *Commonwealth v. Carter*, 403 Pa.Super. 615, 617–18, 589 A.2d 1133, 1134 (1991), *citing Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986); *Commonwealth v. Brown*, 408 Pa.Super. 246, 249, 596 A.2d 840 (1991). Matters of common knowledge may not be the subject of expert testimony. Further, when the matter can be described to the jury and the evidence evaluated by the jury without the assistance of one claiming to possess special expertise, expert testimony is inadmissible. *Carter*, 403 Pa.Super. 617, 589 A.2d at 1134. Although an

5. We note that Trooper Bozich's expert opinion that the packaging, paraphernalia, and quantity of cocaine seized from appellant and his co-defendants was consistent with distribution is not the subject of this opinion since that testimony was clearly admissible. *See, Commonwealth v. Campbell*, 418 Pa.Super. 391, 614 A.2d 692 (1992); *Commonwealth v. Brown*, 408 Pa.Super. 246, 252, 596 A.2d 840 (1991); *Commonwealth v. Robinson*, 399 Pa.Super. 199, 582 A.2d 14 (1990).

expert witness may testify to an ultimate issue of fact, such testimony should be permitted *only* in those instances where the admission will not cause confusion or prejudice. *Brown*, 408 Pa.Super. 250, 596 A.2d at 842. Significantly, expert testimony should not invite the jury to abdicate its responsibility to ascertain and assess the facts and, instead, defer to the expert's opinion. *Carter*, 403 Pa.Super. 617, 589 A.2d at 1134, citing *Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988) and *Seese, supra*, 512 Pa. 439, 517 A.2d 920. This is especially true when the expert witness testifies as an eyewitness in the case and then, applying his special expertise, expresses an opinion as to an ultimate issue of fact. *See, Carter, supra*, 403 Pa.Super. 615, 589 A.2d 1133; *Davis, supra*, at 518 Pa. 77, 541 A.2d 315; *Seese, supra*, at 512 Pa. 439, 517 A.2d 920.

Instantly, we find it was error to permit Trooper Bozich to testify that appellant's and his co-defendant's travels to drug trafficking areas indicated that they were involved in narcotics dealing. We are convinced that the testimony was beyond the scope of Trooper Bozich's qualification as an expert. The lower court apparently recognized this fact when it gave the jury a cautionary instruction which seems to have told the jury that the opinion was not given as an expert. See, N.T., 9/22/93, p. 38, *infra*. However, we are unconvinced that the court's instruction alleviated the prejudice created by Trooper Bozich's opinion.

More importantly, Trooper Bozich was the eyewitness to the actions of appellant and his co-defendant, in addition to being the Commonwealth's expert. He testified that he saw appellant and his co-defendant in areas known for drug trafficking, and, based on that fact *alone*, he opined that appellant and co-defendant were involved in drug-dealing. We see no need for expert testimony at that juncture in the trial since the facts could have been easily assessed by ordinary lay persons. Simply put, special knowledge was not required to determine whether travelling to areas known for drug dealing was consistent with the activities of narcotics dealers. Trooper Bozich's expert opinion at that point in the trial impermissibly encouraged the jurors to defer to his expertise as a narcotics detective, rather than assess the credibility and import of his eyewitness testimony. *Cf., Car-*

*ter, supra* (expert testimony erroneously admitted where police officers were eyewitnesses to drug transaction and experts on drug trafficking and testified that the events that they witnessed were consistent with drug trafficking).

In sum, we reverse and remand for a new trial. We hold that Trooper Bozich's opinion that appellant and his co-defendant were drug dealers simply because they were seen in drug trafficking areas was beyond the scope of his expert qualifications. Further, we are convinced that Trooper Bozich's expert testimony was unduly prejudicial because it prompted the jury to accept his opinion regarding the ultimate issue of fact rather than assess his eyewitness testimony. Laymen certainly could have assessed the eyewitness testimony of Trooper Bozich and inferred that such evidence was indicative of drug dealing without the assistance of an expert.

Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.