J-S74003-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SUDEN FOSTER, | |
| Appellant | No. 1693 EDA 2013 |

Appeal from the Judgment of Sentence Entered May 17, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000490-2010

BEFORE:  BENDER, P.J.E., DONOHUE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED DECEMBER 31, 2014**

Appellant, Suden Foster, appeals from the judgment of sentence of 3 to 6 years' incarceration.  Appellant challenges the sufficiency of the evidence, and the admission of expert testimony.  Appellant also challenges the trial court's denial of his motions for a mistrial following the testimony of a witness for the Commonwealth, and following a statement made by the trial court during jury *voir dire*.  We affirm.

Appellant proceeded to a jury trial on January 29, 2013.  The facts adduced at trial were as follows:

> This case arose from three narcotics surveillances conducted by the Philadelphia Police Department ("PPD") on December 30, 2013, January 7, 2014, and January 10, 2014 at 4904 Old York Road.  The first two surveillances were conducted by Philadelphia

_____

[*] Retired Senior Judge assigned to the Superior Court.

Police Officer Riel Thwaites [] and his partner Officer Young. The third surveillance was conducted in conjunction with the execution of two search warrants. Testifying for the Commonwealth were six police officers, including an expert witness, and a detective who provided rebuttal testimony.

On December 30, 2007[,] at approximately 7:45 p.m., Officers Thwaites and Young directed a confidential informant ("C.I.") to purchase narcotics with pre-recorded United States currency from a bar called the Sports Den at 4904 Old York Road. The C.I. knocked and was admitted by [Appellant]. Approximately one minute later, the C.I. exited the location, and handed over one purple packet to Officer Young. The powder inside the packet tested positive for the presence of cocaine. [Appellant] then exited the location and used a key to access the door to the second floor apartment. Officers Thwaites and Young observed five or six people engage in what they believed to be narcotics transactions at the location that evening.

On January 7, 2008 at approximately 7:45 p.m., Officers Thwaites and Young returned with the same C.I. The C.I. was again searched, given pre-recorded buy money, and directed to purchase narcotics from 4904 Old York Road. After the C.I. made the purchase, Officer Thwaites followed him to a confidential location. The C.I. handed over one purple colored packet containing a white powdered substance, which tested positive for cocaine. Again, [o]fficers observed five or six people engage in what police believed to be narcotics transactions at the location.

On January 10, 2008 at approximately 7:30 p.m., Officers Thwaites, Young, Bogan, Sergeant Torpey and other members of the PPD[] set up a third surveillance. Officer Thwaites secured two search warrants for the first and second floors. Officer Young testified that a black Acura Legend, owned by [Appellant], drove into the parking lot adjacent to the Sports Den. A man exited the vehicle, walked over to the location and was admitted. [Appellant] emerged from the bar, examined his car, and reentered the building, at which time police executed the search warrant for the first floor. Officer Thwaites knocked and announced but there was no answer. Using a ram and a pry tool called a [H]all[i]gan, officers breached the door. The door flew open and immediately slammed shut again. When the door flew open, Officer Thwaites saw [Appellant], who was standing behind the bar, turn towards the rear of the property. Police reopened

the door and gained entry twenty to thirty seconds later. … [Appellant] was not apprehended or seen again until his arrest on April 21, 2009.

Police recovered from the bar area[] eighteen grayish packets of cocaine, one bag containing bulk cocaine, one sandwich bag of marijuana, another plastic bag of marijuana, six yellow packets of marijuana, one pink straw for cutting cocaine, one black scale, and an amber pill bottle which contained five pills. Officers recovered a Verizon statement, in [Appellant's] name, addressed to 4904 Old York Road, which contained a refund check payable to [Appellant]. A Verizon card was also recovered, in [Appellant's] name, addressed to 4904 Old York Road, which also contained a refund check payable to [Appellant]. Police also recovered a photograph of [Appellant] with a small child and a Liberty Travel luggage tag with [Appellant's] name. A Pep Boys bill in [Appellant's] name was also recovered from the first floor. Additionally, four bags of new and unused narcotics packaging were found behind the bar. Police confiscated $436.00 from the cash register. From the second floor apartment, … police recovered another Verizon bill in Appellant's name. Finally, [Appellant's] vehicle was confiscated.

A total of 19.07 grams of cocaine and over 7 grams of marijuana were recovered. Officer Keys, a narcotics expert, testified that: "...the narcotics as well as the packaging, scale, [and] the straw [were] possessed with intent to distribute []."

Trial Court Opinion (TCO), 6/10/14, at 3 – 6 (citations to the record omitted).

Appellant was convicted of possession with intent to deliver on January 31, 2013. On May 17, 2013, Appellant was sentenced to a term of 3 to 6 years' incarceration. He filed a timely notice of appeal, as well as a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant now presents the following questions for our review:

I.  The trial court erred in reading the Commonwealth's submitted statement of the case to the jury[,] as provided to the trial court by the prosecution[,] because it grossly mischaracterized the evidence. Moreover, a curative instruction was warranted[,] and sought[,] but denied.

II.  [] The Commonwealth's use of a drug expert constituted prejudicial error[,] and [] [Appellant's] request for a mistrial in that regard was improperly denied.

III.  Officer Thwaites'[s] testimony on cross-examination regarding a phone conversation he had with Appellant was in violation of Pa.R.Crim.P. 573 and [*Commonwealth v.*] *Brady*[, 63 S.Ct. 1194 (1963),] because it was not turned over to Appellant prior to trial. The trial court erred in denying Appellant's motion for mistrial with regard to this issue where[,] even after a sustained objection to the first improper question, the [Commonwealth] followed up with another question about the phone conversation that was grossly improper and prejudicial.

IV.  [] The evidence presented by the Commonwealth at trial was insufficient as a matter of law to support a guilty verdict on the [possession with intent to deliver] charge.

Appellant's brief at 11 (unnecessary capitalization omitted).

For the sake of clarity, we first turn to Appellant's challenge to the sufficiency of the evidence. We begin by noting that Appellant concedes: "In the light most favorable to the Commonwealth, the evidence was sufficient to establish [Appellant's] guilt." *Id*. at 43. However, Appellant argues, that "two equally reasonable and mutually inconsistent inferences can be drawn" from the evidence in the instant case, and "a jury must not be permitted to guess which inference it will adopt." Appellant's brief at 44 (citations

omitted). In presenting this argument, Appellant disregards our well-established standard of review with regard to sufficiency of the evidence, which is as follows:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt . . . . When reviewing the sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (citations omitted). On appeal, "we may not weigh the evidence and substitute our judgment for that of the fact-finder." *Commonwealth v. Ventrini*, 734 A.2d 404, 407 (Pa. Super. 1999) (citations omitted). Furthermore, we recognize that "the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Id*.

In the instant case, the police did not seize narcotics from Appellant's person. Consequently, the Commonwealth was required to prove that Appellant constructively possessed the narcotics. *See Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013). The Commonwealth may meet its burden of proof "by means of wholly circumstantial evidence." *Id.* at 820.

Here, the police engaged the assistance of a confidential informant. The informant was sent, on two separate occasions, to purchase narcotics. On both occasions, police observed Appellant open the door for the

informant to enter 4904 Old York Road. The informant then left a few minutes later, and turned over cocaine to the police. The police on both occasions also observed Appellant admit a number of people to the building. These people left the building minutes after they entered.

The police subsequently executed a search warrant at that address, during which they discovered a large quantity of cocaine and marijuana, as well as a straw and a scale. An expert witness for the Commonwealth testified that the manner in which the narcotics were packaged, as well as the presence of the scale and straw, indicated that the narcotics were possessed with the intent to distribute them.

The narcotics were seized from an area where the police also discovered personal effects containing Appellant's name, such as a phone bill, a Pep Boys bill, and a luggage claim check. The address provided on the phone bill was 4904 Old York Road. There was a picture of Appellant on the wall of the room from where the contraband was seized. When the police executed the search warrant, Appellant fled from the premises (while the two other people who were present did not). Moreover, at the time the warrant was executed, Appellant was standing behind the bar, where the narcotics were recovered. Having reviewed the record before us, we conclude that the evidence was sufficient to allow the jury to find that Appellant constructively possessed cocaine with the intent to deliver it.

We now turn to Appellant's claim that a mistrial was required after the trial court read a memorandum prepared by the Commonwealth to the jury

during *voir dire* that stated, "after he [Appellant] sold the cocaine...."[1]
Appellant's brief at 15. Appellant argues that he was prejudiced by this
statement because it "gave the jury... the impression... it was a foregone
conclusion that Appellant sold the drugs." *Id*. Appellant filed a motion for
extraordinary relief, seeking a mistrial, which the trial court denied.

We review the denial of motions for mistrial under the following
standard:

> The denial of a motion for a mistrial is assessed on appellate
> review according to an abuse of discretion standard. The central
> tasks confronting the trial court upon the making of the motion
> were to determine whether misconduct or prejudicial error
> actually occurred, and if so, to assess the degree of any resulting
> prejudice.

*Commonwealth v. Kerrigan*, 920 A.2d 190, 199 (Pa. Super. 2007)
(quoting *Commonwealth v. Sanchez*, 907 A.2d 477, 491 (Pa. 2006)
(internal citation omitted)). Moreover,

---

[1] Appellant appears to raise an additional allegation of prosecutorial
misconduct with regard to the memorandum the Commonwealth prepared.
During a sidebar discussion between counsel and the judge regarding the
admissibility of expert testimony, counsel for the Commonwealth stated that
"There are no buys in this case whatsoever observed." N.T., 1/29/13, at 77.
Appellant claims that this statement contradicts the Commonwealth's
memorandum. Notwithstanding Appellant's claim, these statements are not
irreconcilable. As noted *infra*, the Commonwealth was not required to offer
eyewitness testimony regarding a transaction, as they were permitted to
establish their burden of proof through wholly circumstantial evidence. The
mere fact that the police did not observe Appellant selling narcotics did not
bar the Commonwealth from introducing evidence, and arguing, that
Appellant sold narcotics. In fact, this was exactly what the Commonwealth
was required to prove.

> [w]hether to grant the extreme remedy of a mistrial is a matter falling into the discretion of the trial court. "A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial."

***Commonwealth v. Boczkowski***, 846 A.2d 75, 95 (Pa. 2004) (quoting ***Commonwealth v. Jones***, 668 A.2d 491, 503 (Pa. 1995)).

Any potential prejudice incurred by the trial court's brief statement during *voir dire* was mitigated by the court's much lengthier opening instructions to the jury regarding Appellant's presumption of innocence:

> Please remember that the charges that are brought against [Appellant] are accusations. They are not proof that [Appellant] is guilty.
>
> Remember that a fundamental [principle] of our law is that you must presume [Appellant] is innocent. This means you are to accept that the mere fact he has been charged with this crime doesn't mean he's guilty of it. He begins the case with a clean slate and has no obligation to prove his innocence.
>
> It is always the Commonwealth that bears the burden of convincing you, the jurors, that [Appellant][,] [who] is presumed innocent as the trial begins and as the trial progresses, is guilty of the crimes for which he's charged.
>
> To succeed, the Commonwealth must convince you that based on a fair consideration of all the evidence that will be offered, each element of the offense charged has been proven beyond a reasonable doubt.

N.T., 1/29/13, at 5 – 6. In light of these opening instructions by the court, Appellant has failed to establish that the trial court's brief statement during jury *voir dire* so deprived him of a fair trial that the extreme remedy of a mistrial was warranted. Accordingly, we conclude that the trial court's denial of Appellant's motion for mistrial was not an abuse of discretion.

Next, we address Appellant's claim regarding the admissibility of expert testimony offered by the Commonwealth. Specifically, Appellant argues that such testimony was improper and cumulative. In support of this claim, Appellant relies on this Court's holdings in ***Commonwealth v. Carter***, 589 A.2d 1133 (Pa. Super. 1991), and ***Commonwealth v. Montavo***, 653 A.2d 770 (Pa. Super. 1995). In both ***Carter*** and ***Montavo***, this Court held that where police observe a narcotics sale, expert testimony "concerning whether the facts surrounding the possession of controlled substances were consistent with an intent to deliver" is inadmissible. ***Carter***, 589 A.2d at 619 (internal citation omitted). Where an eyewitness can testify that a transaction occurred, a factfinder does not require special knowledge to reach the conclusion that the transaction did in fact occur. ***Id***.

The instant case is easily distinguished from ***Carter*** and ***Montavo***. As Appellant concedes, "the [confidential informant] did not testify, nor did anyone testify that [A]ppellant was seen possessing or selling drugs." Appellant's brief at 38. Here, it is uncontroverted that the police did not observe Appellant engage in a narcotics sale. As such, it was not error for the trial court to permit the Commonwealth to introduce the testimony of an expert witness.

Finally, we turn to Appellant's claim that the trial court erred in denying a mistrial when a witness testified about a phone call with Appellant. On cross-examination, counsel for Appellant elicited testimony from a police officer indicating that the officer had spoken with Appellant on the telephone

prior to Appellant's arrest.[2]  Subsequently, on redirect examination, counsel

for the Commonwealth asked this witness about speaking to Appellant via

telephone.    Counsel for Appellant objected.    Inexplicably, the sidebar

discussion regarding this objection was not transcribed.  Therefore, it is not

part of the record before this Court on appeal, and we do not know the basis

of Appellant's objection to this testimony.    The trial court ultimately

sustained Appellant's objection to the question, and instructed the jury not

to consider it, but denied Appellant's motion for a mistrial.[3]

Appellant appears to argue that a mistrial was warranted because the

Commonwealth committed a pretrial discovery violation when it failed to

disclose the existence of this phone call to Appellant.  Specifically, Appellant

---

[2] Appellant states in his brief that his counsel objected to this testimony during cross-examination, and that the objection was sustained.  Appellant's brief at 33.  We have reviewed the notes of testimony, and the record does not reflect that Appellant's counsel objected to this testimony during his cross-examination of the witness who testified about the phone call.  N.T., 1/29/13, at 56 – 59.  Our review of the record indicates that counsel for Appellant objected to this testimony for the first time during the Commonwealth's redirect examination.  *Id*. at 63.  Moreover, the trial court did not issue a ruling regarding the admissibility of this testimony until Appellant's counsel objected during the Commonwealth's redirect examination.  Appellant's contention that the Commonwealth attempted to solicit testimony that the trial court had already deemed inadmissible is not supported by the record.

[3] The failure to object to a curative instruction constitutes a waiver of the claim that that instruction was insufficient.  ***Commonwealth v. Hodge***, 411 A. 2d 503, 509 n. 8 (Pa. Super. 1979).  Given that the sidebar regarding this issue was not transcribed, the record does not reflect whether Appellant objected to the curative instruction admonishing the jury not to consider the Commonwealth's question.

alleges that the failure to disclose the existence of this phone call violated Pa.R.Crim.P. 573, which states in applicable part,

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth.

In addition, Appellant argues that the Commonwealth's failure to disclose the existence of the phone call violated his federal constitutional rights as detailed in **Brady**, in which the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Brady**, 63 S.Ct. at 1196-1197. With regard to **Brady** violations, the Pennsylvania Supreme Court has held:

To prove a **Brady** violation, Appellant must demonstrate that: (1) the prosecution concealed evidence; (2) which evidence was either exculpatory or impeachment evidence favorable to him and; (3) he was prejudiced by the concealment. In order to prove prejudice, Appellant must show a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Stated differently, the undisclosed evidence must be "material to guilt or punishment." Further, "[i]mpeachment evidence which goes to the credibility of a primary witness against the accused is critical evidence and it is material to the case whether that evidence is

- 11 -

merely a promise or an understanding between the prosecution and the witness." … Finally, we note that "[t]here is no **Brady** violation when the appellant knew, or with reasonable diligence, could have uncovered the evidence in question."

**Commonwealth v. Bomar**, 2014 WL 6608963, at *5 (Pa. Nov. 21, 2014) (internal citations omitted).

Appellant claims that he could not have uncovered the evidence in question with reasonable diligence. However, the evidence in question is a phone call to which Appellant was a party. It is unclear how Appellant could not have known about a conversation in which he participated. Moreover, nothing in the record before us suggests that counsel for the Commonwealth knew about this phone conversation before counsel for Appellant solicited testimony about it during trial. Accordingly, we conclude this claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/2014

- 12 -