455 A.2d 627

**COMMONWEALTH of Pennsylvania**

v.

**Eugene BROCKINGTON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Dec. 6, 1982.

Decided Jan. 28, 1983.

David L. Pollack, Philadelphia (court-appointed), for appellant.

Robert B. Lawler, Chief, Appeals Div., Eric I.B. Beller, Asst. Dist. Attys., for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

218

ROBERTS, Chief Justice.

This is an appeal from judgments of sentence imposed at the conclusion of a bench trial by the Court of Common Pleas of Philadelphia upon verdicts of guilty of murder of the third degree and criminal conspiracy. Appellant contends that the verdicts were against the weight of the evidence and that the trial court erred in refusing to admit the results of a polygraph examination administered by the police. We reject these contentions and affirm.

On December 16, 1978, the body of the victim, Ronald Williams, was discovered on the second floor landing of his home. An autopsy showed that the victim had died from multiple stab wounds to the upper portion of the body. Investigating police officers discovered a bloodstained sweater and jacket which contained holes corresponding to the location of stab wounds in the victim's body.

Ten days later, appellant, with his co-defendant Larry Sutton, approached a police officer in the emergency room of Temple University Hospital and said, "Here I am. I killed Rodney Williams." Appellant was placed under arrest and subsequently made a full confession at police headquarters. In his confession, which was introduced at trial, appellant stated that he and his co-defendant Sutton had assaulted the victim because they had suspected that the victim had attacked Sutton's girlfriend.

Appellant contends that because of alleged discrepancies between the confession and the facts as established at trial, his confession was unworthy of belief and the verdicts thus against the weight of the evidence. In support of his contention, appellant alleges that while he confessed to stabbing the victim in the stomach or chest, evidence at trial established that nine of the ten stab wounds had been inflicted to the victim's back. Appellant also maintains that while in his confession he stated that the stabbing had taken place on a street about two blocks from the victim's home, and that the victim had fled on foot after the assault,

eluding both his attackers, it was established at trial that there was no trail of blood leading from the scene of the attack to the victim's home. In addition, according to appellant, the victim would not have been able to elude two healthy men after suffering the fatal stab wounds.

These alleged discrepancies provide no basis for relief. In his confession, appellant stated that he had stabbed the victim "about four times . . . [i]n the stomach or chest. I ain't sure. I just kept on stabbing him." The actual location of the stab wounds in the upper portion of the body is consistent with the vague, uncertain description of the location of the wounds given in appellant's confession. As to the absence of a trail of blood leading to the victim's home, a medical expert testified for the Commonwealth that the stab wounds would not necessarily have produced a large amount of external bleeding, and that the victim's heavy outer clothing could have absorbed what bleeding did occur. The medical expert also testified that the victim probably would have lived for five to twenty minutes after the stabbing, and that he would have been able to reach home despite his wounds.

Appellant also focuses on alleged discrepancies between the victim's actual appearance and his description of the victim, including the fact that while he described the victim as a black man of light complexion, the victim had actually been of dark complexion. In addition, appellant maintains that while he identified the victim as "Rodney Williams," the victim was known as "Ronnie." These alleged discrepancies are derived from a selective reading of the confession. In the confession, appellant stated unequivocally that he had known the victim prior to the incident because the victim had lived on the same block as appellant's girlfriend. When asked if he knew "Ronnie Williams," appellant responded, "Yeah, but I knew him as Rodney."

It is the factfinder's function to pass upon the credibility of witnesses and upon the weight to be accorded the evidence. E.g., *Commonwealth v. Arms,* 489 Pa. 35, 413 A.2d 684 (1980). As we are satisfied that appellant has

presented no basis for disturbing the trial court's determination of the facts, we reject appellant's claim that the verdicts are against the weight of the evidence.[1]

In his remaining claim of error, appellant challenges the trial court's refusal to admit the results of a polygraph examination administered by police shortly after appellant's confession. Appellant urges us to reject our decisions which bar admission of the results of polygraph examinations, see, e.g., *Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976), and to admit the results of a polygraph examination when there has been a stipulation as to the admissibility of the results prior to the administration of the examination. In appellant's view, the independent decision of police to administer the examination should be deemed a stipulation as to the admissibility of the results. We are satisfied, however, that the trial court properly barred the admission of the results, as it is obvious that the "stipulation" as to admissibility did nothing to enhance the reliability of the results of the polygraph examination.[2]

Judgments of sentence affirmed.

1. Contrary to appellant's additional assertion, the evidence presented by the Commonwealth, including appellant's full confession, is more than sufficient to support the verdicts of guilty.

In conjunction with the contention that the verdicts were against the weight of the evidence, appellant contends that his confession may not be considered in evaluating the sufficiency of the evidence. It is axiomatic, however, that in evaluating a sufficiency claim this Court will not subtract from the record evidence admitted at trial, even if that evidence was erroneously admitted. See, e.g., *Commonwealth v. Meadows,* 471 Pa. 201, 369 A.2d 1266 (1977).

2. The question of the admissibility of the results of a polygraph examination on the basis of a stipulation was recently considered by the Superior Court, which concluded that because a stipulation does not contribute to the reliability of the results of the polygraph examination, the results are inadmissible. *Commonwealth v. Pfender,* 280 Pa.Super. 417, 421 A.2d 791 (1980) (allocatur denied). See also *Pulakis v. State,* 476 P.2d 474 (Alaska 1970); *People v. Monigan,* 72 Ill.App.3d 87, 28 Ill.Dec. 395, 390 N.E.2d 562 (1979); *Akonom v. State,* 40 Md.App. 676, 394 A.2d 1213 (1978); *State v. Frazier,* 252 S.E.2d 39 (W.Va.1979). Additionally, two jurisdictions which had previously allowed the admission of the results of a polygraph examination on the basis of a stipulation have recently reversed their

position. *Fulton v. Oklahoma,* 541 P.2d 871 (Okl.Cr.1975); *State v. Dean,* 103 Wis.2d 228, 307 N.W.2d 628 (1981).