517 A.2d 920

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Harry Ray SEESE, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 19, 1986.

Decided Nov. 17, 1986.

Carmela R.M. Presogna, Asst. Public Defender, Erie, for appellant.

Michael J. Veshecco, Dist. Atty., Paul J. Susko, Asst. Dist. Atty., Erie, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, MCDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT .

FLAHERTY, Justice.

This is an appeal from a memorandum opinion and order of the Superior Court, 344 Pa.Super. 626, 495 A.2d 615, which affirmed judgments of sentence imposed upon the appellant, Harry Ray Seese, in connection with appellant's having been found guilty in a trial by jury of statutory rape and corruption of a minor. The incidents upon which the convictions were based involved appellant's sexual activities with an eight year old girl.

The primary issue to be addressed in the instant appeal is whether the trial court erred in admitting testimony of the Commonwealth's expert witness, a board certified pediatrician, as to the veracity of eight year old children who claim to have been the objects of sexual abuse. The issue arose in this case because the eight year old victim had testified to sexual contacts initiated by appellant. Specifically, the pediatrician testified that she had, during the preceding four years, treated approximately 90 to 100 cases per year of alleged sexual abuse. Following that testimony, the prosecutor posed to the pediatrician the following question:

Based upon your experience and your pediatric specialization, does the medical literature say anything about children of the age of eight in giving complaints of sexual abuse or rape as far as their veracity?

Counsel for the defense objected to this question, and the court sustained the objection insofar as the reference to medical literature, but the court allowed the witness to answer the question with the proviso that the answer be based upon the witness' own knowledge and experience alone. When the question was rephrased in this manner, the witness testified as follows:

I think there is a couple of points to be made and to be objective about this. The first is, do children lie when they are put under stress with members of the family? It is very unusual that a child would lie about sexual abuse. Having said that there are many articles I could bring in and submit to the court. Prepubertal children, which she fits into the category of essentially that, do not lie. The sexual abuse literature is fraught with articles, and prepubertal children usually do not lie about matters of sexual abuse no matter how chaotic or uncomfortable their home situation is, one, because they don't know how to lie about it. They don't know what to say. It's not part of the life experience, so everything they say is something they have seen or experienced. It would be

very unusual for them to lie. I have seen one child in the four years that I have been doing this that I think was lying. She was a 16 year old girl, and I think she was lying for reasons of placement and so on, but I have not seen any younger children lie, and the articles, the medical literature articles bear that out. Even if she did, it would be very atypical. I can't imagine if she was going to make up a lie that it would be about. . . .

Thus, although the physician persisted in making reference to the medical literature in her response to the question, the essence of her response was that, based upon her own experience, young children usually do not fabricate stories of sexual abuse because they do not have sexual knowledge sufficient to supply details regarding sexual encounters. Thus, the testimony consisted of expert opinion as to the veracity of the class of potential witnesses of which the victim was a member.

It has long been established that expert opinion testimony is proper only where formation of an opinion on a subject requires knowledge, information, or skill beyond what is possessed by the ordinary juror. As stated in *Commonwealth v. Leslie,* 424 Pa. 331, 334, 227 A.2d 900, 903 (1967) (quoting *Commonwealth v. Nasuti,* 385 Pa. 436, 443, 123 A.2d 435, 438 (1956)), " 'Expert testimony is admissible in all cases, civil and criminal alike, when it involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience.' " See also *Collins v. Zediker,* 421 Pa. 52, 218 A.2d 776 (1966); *Churbuck v. Union Railroad Co.,* 380 Pa. 181, 110 A.2d 210 (1955). In *Collins v. Zediker,* 421 Pa. at 53–56, 218 A.2d at 777–778, it was stated,

Phenomena and situations which are matters of common knowledge, may not be made the subject for expert testimony. In *Burton v. Horn and Hardart Baking Co.,* 371 Pa. 60, 88 A.2d 873, 63 A.L.R.2d 731, this Court said: "Expert testimony is inadmissible when the matter can be described to the jury and the condition evaluated by them

without the assistance of one claiming to possess special knowledge upon the subject."

. . . .

As this Court said in *Dooner v. Delaware & H. Canal Co.*, 164 Pa. 17, 30 A. 269: "The jury still have some duties to perform. Inferences drawn from the ordinary affairs of life ought not to be drawn for them, and turned over under oath from the witness stand."

The question of whether a particular witness is testifying in a truthful manner is one that must be answered in reliance upon inferences drawn from the ordinary experiences of life and common knowledge as to the natural tendencies of human nature, as well as upon observations of the demeanor and character of the witness. See *Danovitz v. Portnoy*, 399 Pa. 599, 604–605, 161 A.2d 146, 149 (1960). The phenomenon of lying, and situations in which prevarications might be expected to occur, have traditionally been regarded as within the ordinary facility of jurors to assess. For this reason, the question of a witness' credibility has routinely been regarded as a decision reserved exclusively for the jury. *Commonwealth v. Shaver*, 501 Pa. 167, 173, 460 A.2d 742, 745 (1983) ("It is solely the province of the trier of fact to pass upon the credibility of witnesses...."); *Commonwealth v. Brockington*, 500 Pa. 216, 219, 455 A.2d 627, 628 (1983); *Commonwealth v. O'Searo*, 466 Pa. 224, 229, 352 A.2d 30, 32 (1976) ("Traditionally, we have recognized not only the jury's ability to determine the credibility of the witnesses but also we have placed this determination within their sole province.").

■ It is an encroachment upon the province of the jury to permit admission of expert testimony on the issue of a witness' credibility. *Commonwealth v. O'Searo*, 466 Pa. at 228–229, 352 A.2d at 32. Indeed, to permit expert testimony for the purpose of determining the credibility of a witness "would be an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying

upon the questionable premise that the expert is in a better position to make such a judgment." *Id.*

Thus, in the instant case, it was error to admit expert testimony as to the credibility of children who are of an age similar to that of the prosecution's chief witness, the crime victim. Adherence to a rule excluding such testimony is further warranted in view of the consequences that would ensue if such testimony were to be admitted. For example, if testimony as to the veracity of various classes of people on particular subjects were to be permitted as evidence, one could imagine "experts" testifying as to the veracity of the elderly, of various ethnic groups, of members of different religious faiths, of persons employed in various trades and professions, etc. Such testimony, admitted as evidence, would encourage jurors to shift their focus from determining the credibility of the *particular* witness who testified at trial, allowing them instead to defer to the so-called "expert" assessment of the truthfulness of the class of people of which the particular witness is a member. In addition, such testimony would imbue the opinions of "experts" with an unwarranted appearance of reliability upon a subject, veracity, which is not beyond the facility of the ordinary juror to assess.

Although opinion *evidence* is not to be permitted on the issue of a witness' credibility, there remain, of course, all of the traditional methods for developing, or attacking, a witness' credibility. In addition, through counsel's *arguments* to the jury, the jurors can be made to consider matters of witness credibility, such as, in the present case, whether children are to be believed when they assert claims of sexual abuse. Nevertheless, it is clear that the expert testimony on veracity challenged in the instant case was improperly admitted, and, because that testimony was necessarily prejudicial to appellant due to the fact that the prosecution relied primarily upon the perceived veracity of

the victim to establish its case, appellant must be awarded a new trial.[1]

Judgment of sentence reversed, and a new trial granted.

LARSEN, J., files a concurring opinion.

LARSEN, Justice, concurring.

I concur in the result only. I would adopt the rationale set forth by the United States Court of Appeals for The Eighth Circuit, *United States v. Azure*, 801 F.2d 336 (8th Cir.1986), which was decided on September 17, 1986, two days before oral argument in the within case. The Eighth Circuit Court of Appeals stated in that case, at 339–341, the following:

"Although several issues are raised on this appeal, we are primarily concerned with the question whether a pediatrician may give his opinion as to the truth of the story of a victim of child sexual abuse, an issue of first impression in this circuit. At trial, Dr. Robert ten Bensel was called to testify on behalf of the government. Dr. ten Bensel is a pediatrician and an expert on child abuse. Over pretrial objections by Azure, Dr. ten Bensel was allowed to testify that Wendy was believable and that he could "see no reason why she would not be telling the truth in this matter.... " The trial court ruled that Dr. ten Bensel's opinion of the believability of Wendy's story was admissible under Fed.R. Evid. 702 as an expert opinion.

Azure argues that Dr. ten Bensel was not qualified to give an opinion on the credibility of Wendy and that the challenged testimony invaded the exclusive province of the jury to determine the credibility of witnesses. We must agree. Rule 702 allows an expert to give an opinion when

1. In view of our disposition of this issue, we need not address appellant's additional claim that a mistrial should have been granted based upon alleged prosecutorial misconduct during closing arguments.

his specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue...." The decision whether to permit expert testimony ordinarily lies within the discretion of the trial court and will not be reversed absent an abuse of discretion. *United States v. Rose,* 731 F.2d 1337, 1345 (8th Cir.), *cert. denied,* [469 U.S. 931], 105 S.Ct. 326 [83 L.Ed.2d 263] (1984).

Research has not revealed any federal cases addressing this particular issue, but some circuits have addressed the question of the admissibility of expert opinion testimony on credibility in general. In *United States v. Barnard,* 490 F.2d 907 (9th Cir.1973), *cert. denied,* 416 U.S. 959 [94 S.Ct. 1976, 40 L.Ed.2d 310] (1974), the defendants offered expert psychiatric testimony that a government witness was a sociopath who would lie in testifying. In upholding the trial court's rejection of this testimony, the court stated:

> [C]ompetency is for the judge, not the jury. Credibility, however, is for the jury—the jury is the lie detector in the courtroom ... It is now suggested that psychiatrists and psychologists have more [expertise in weighing the veracity of a witness] than either judges or juries, and that their opinions can be of value to both judges and juries in determining [credibility]. Perhaps. The effect of receiving such testimony, however, may be two-fold: first, it may cause juries to surrender their own common sense in weighing testimony; second, it may produce a trial within a trial on what is a collateral but still an important matter.

*Id.* at 912. *See also United States v. Awkard,* 597 F.2d 667, 671 (9th Cir.), *cert. denied,* 444 U.S. 885 and 969 [100 S.Ct. 179 and 460, 62 L.Ed.2d 116 and 383] (1979). The Ninth Circuit has further held that "[u]nder the Federal Rules, opinion testimony on credibility is limited to character; all other opinions on credibility are for the jurors themselves to form." *Awkard,* 597 F.2d at 671. *See also United States v. Rosenberg,* 108 F.Supp. 798, 806 (S.D.N.Y. 1952) ("[I]t is hornbook law that the credibility of a witness

and the weight to be given his testimony rests exclusively with the jury."), *aff'd,* 200 F.2d 666 (2d Cir.1952).

The Tenth Circuit addressed this question in *United States v. Samara,* 643 F.2d 701 (10th Cir.), *cert. denied,* 454 U.S. 829 [102 S.Ct. 662, 70 L.Ed.2d 633] (1981). In a tax evasion case, the court upheld the trial court's rejection of an offered summary of the evidence by a defense expert, stating that "[a]n expert 'may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility.'" *Id.* at 705 (quoting *United States v. Ward,* 169 F.2d 460, 462 (3d Cir.1948)).

The government does not disagree with these statements of the law, but it contends that child sexual abuse cases present special circumstances where ordinary jurors need help in assessing the credibility of a child witness. *See State v. Saldana,* 324 N.W.2d 227, 231 (Minn.1982). The government argues that an expert with knowledge of how children, and in particular sexually abused children, think and act can aid jurors in a matter which is beyond their common knowledge and ordinary experience. Since Dr. ten Bensel has handled around one thousand child abuse cases and two hundred child sexual abuse cases, the government argues that he was qualified to give an opinion on the believability of Wendy and thereby aid the jurors in assessing her credibility.

We agree that in these types of special circumstances some expert testimony may be helpful, but putting an impressively qualifed expert's stamp of truthfulness on a witness' story goes too far in present circusmtances. Dr. ten Bensel might have aided the jurors without usurping their exclusive function by generally testifying about a child's ability to separate truth from fantasy, by summarizing the medical evidence and expressing his opinion as to whether it was consistent with Wendy's story that she was sexually abused, or perhaps by discussing various patterns of consistency in the stories of child sexual abuse victims

and comparing those patterns with patterns in Wendy's story. However, by going further and putting his stamp of believability on Wendy's entire story, Dr. ten Bensel essentially told the jury that Wendy was truthful in saying that Azure was the person who sexually abused her. No reliable test for truthfulness exists and Dr. ten Bensel was not qualified to judge the truthfulness of that part of Wendy's story. The jury may well have relied on his opinion and "surrender[ed] their own common sense in weighing testimony...." *Barnard*, 490 F.2d at 912.

Nor was Dr. ten Bensel's believability opinion admissible under Fed.R.Evid. 608(a), which states:

> The credibility of a witness may be ... supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Dr. ten Bensel's opinion evidence went beyond the limitation in Rule 608(a)(1) of only addressing character for truthfulness and addressed the specific believability and truthfulness of Wendy's story. "[S]uch testimony is capable at times of so bolstering a witness' testimony as artificially to increase its probative strength with the jury, and ... its admission therefore may in some situations on this basis constitute reversible error." *Homan v. United States*, 279 F.2d 767, 772 (8th Cir.), *cert. denied*, 364 U.S. 866 [81 S.Ct. 110, 5 L.Ed.2d 88] (1960). *See also United States v. Price*, 722 F.2d 88, 90 (5th Cir.1983) (admission of Revenue Agent's testimony that he relied on statements of two people in his investigation because he "believed them" constituted reversible error), *cert. denied* [473 U.S. 904], 105 S.Ct. 3526 [87 L.Ed.2d 651] (1985). We conclude that the trial court abused its discretion in allowing Dr. ten Bensel to give his opinion as to the believability of Wendy's story."