J-S75016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PATRICIA E. GADALETA | |
| Appellant | No. 49 EDA 2014 |

Appeal from the Judgment of Sentence November 22, 2013
In the Court of Common Pleas of Carbon County
Criminal Division at No(s): CP-13-CR-0000746-2010

BEFORE:  ALLEN, J., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 16, 2015**

Patricia E. Gadaleta appeals from her judgment of sentence, imposed by the Court of Common Pleas of Carbon County, following Gadaleta's convictions for theft by deception,[1] receiving stolen property,[2] and two counts of issuing a bad check.[3]  Upon review, we affirm Gadaleta's judgment of sentence based on the opinion of the Honorable Joseph J. Matika.

In July 2010, Gadaleta contacted Cheri Conway, a dog breeder, to inquire about purchasing a dog.  Using the pseudonym Meg Kippler,

---

[1] 18 Pa.C.S. § 3922(a)(1).

[2] 18 Pa.C.S. § 3925(a).

[3] 18 Pa.C.S. § 4105(a)(1).

Gadaleta negotiated the purchase of two Labrador retrievers[4] from Conway for the price of $5,018.00.[5] Gadaleta signed the agreement of sale as Meg Kippler and returned it to Conway. After Conway received two bad checks from Gadaleta, she notified her local police, who in turn contacted the Pennsylvania State Police in Leighton. On September 23, 2010, Pennsylvania State Trooper Nicolas De La Iglesia obtained and executed a search warrant at Gadaleta's residence.

While searching Gadaleta's home, Trooper De La Iglesia found the two dogs and their shipping crates as well as the agreement of sale signed by "Meg Kippler." The Trooper also found FedEx shipment slips with the name "Kippler" on them in addition to email correspondences between "Kippler" and Conway.

On September 9, 2013, the jury convicted Gadaleta of the aforementioned offenses. On November 22, 2013, the court sentenced Gadaleta to 12 to 24 months' incarceration, followed by one year of probation. This timely appeal followed.

On appeal, Gadaleta presents the following issues for our review:

> 1. Did the court err in allowing testimony over objection concerning the contents of the cell phones received from

---

[4] Gadaleta agreed to purchase Romeo, a yellow Labrador retriever, and Winston, a chocolate Labrador retriever. Both dogs were micro-chipped.

[5] This price included the two dogs, airfare to ship the dogs from Sacramento to Philadelphia, two new shipping crates, and health certificates.

Anthony Gadaleta months after the search of the residence?

2. Is the verdict contrary to the law in that there was no evidence connecting the person known to the victim as Meg Kippler with Patricia Gadaleta?

3. Is the verdict contrary to the law in that there is absolutely no evidence the party that issued the checks with insufficient funds was Patricia Gadaleta?

4. Is the verdict contrary to the law in that there is absolutely no evidence the email address referenced in the communications between seller and buyer was that of Patricia Gadaleta?

Brief of Appellant, at 7.

Gadaleta's first issue on appeal implicates the admissibility of evidence. Our standard of review is as follows:

The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa. Super. 2003) (citations and quotations omitted).

Gadaleta's remaining issues challenge the sufficiency of the evidence sustaining her convictions. Our standard of review for sufficiency of the evidence claims is well settled:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every

element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super. 2012) (citations omitted).

We have reviewed the record on appeal and the relevant law, and find that the well-reasoned opinion of Judge Matika thoroughly, comprehensively and correctly disposes of the issues Gadaleta raises on appeal. Specifically, the trial court did not abuse its discretion when it admitted testimony regarding the contents of Gadaleta's cell phones because the evidence of calls placed to Conway was relevant to establishing who placed the calls to Conway. *See* Pa.R.E. 401. Additionally, the evidence connecting Gadaleta to the identity of "Meg Kippler" was overwhelming. Accordingly, we affirm based on Judge Matika's opinion. Counsel is directed to attach a copy of the trial court opinion in the event of further proceedings in this matter.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/16/2015

IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :
                                  :
              vs.                 :   No. 746 CR 2010
                                  :
PATRICIA E. GADALETA,             :
        Defendant/Appellant       :

Jean A. Engler, Esquire                Counsel for Commonwealth
                                       Assistant District Attorney
Kent D. Watkins, Esquire               Counsel for Defendant

MEMORANDUM OPINION

Matika, J. – March 13 , 2014

On September 10, 2013, a jury found the Defendant, Patricia E. Gadaleta, guilty of one count of theft by deception,[1] one count of receiving stolen property,[2] and two counts of issuing a bad check.[3] After a pre-sentence investigation was prepared, this Court imposed a total sentence upon the Defendant of not less than twelve months nor more than twenty-four months in a state correctional institution, followed by one year of state probation. The Defendant did receive one hundred sixty-nine days credit against her sentence for time already served.

Subsequently, Defendant appealed the jury verdict. This memorandum opinion is submitted in accordance with Pennsylvania

---

[1] 18 Pa.C.S.A. § 3922(a)(1).

[2] 18 Pa.C.S.A. § 3925(a).

[3] 18 Pa.C.S.A. § 4105(a)(1).

APPENDIX B

[FM-11-14]

1

Rule of Appellate Procedure 1925(a). For the reasons stated below, this Court requests the Honorable Superior Court to affirm the judgment of sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 2013, Defendant was found guilty of intentionally obtaining the property of Kevin and Cheri Conway, more specifically two male Labrador dogs and two shipping crates, by intentionally creating the false impression that she was an individual by the name of Meg Kippler. Defendant was also found guilty of two counts of issuing a bad check in the amounts of five thousand forty dollars ($5,040.00) and five thousand one hundred ninety dollars ($5,190.00), respectively.

The evidenced proffered at trial establish that Cheri Conway, (hereinafter "Conway"), owned and operated a kennel from which she breed and sold dogs. (N.T. 9/9/13 at 86-87). In July of 2010, Conway was contacted, via telephone, by an individual identifying herself as Meg Kippler in regards to purchasing a Labrador retriever.[4] This individual, Meg Kippler, informed Conway that her and her husband Ron wanted a family pet that was already housebroken and about a year old. *Id.* at 88-89. After various phone calls and email correspondences between the parties, Defendant, through the use of the identity of Meg

---

[4] At all times relevant to this matter, the Defendant communicated with Conway under the false perception that she, the Defendant, was an individual by the name of Meg Kippler.

Kippler, agreed to purchase from Conway a male chocolate Labrador retriever named Winston and a yellow male Labrador retriever named Romeo for the price of two thousand dollars per retriever. *Id.* at 91, 94.

Upon reaching an oral agreement, Conway prepared and emailed the Defendant the agreement of sale. The agreement of sale was between Conway and "Meg and/or Ron Kippler" with an email address of 1265chase@gmail.com. Additionally, the sales contract included the purchase price for the two dogs of five thousand eighteen dollars ($5,018.00),[5] along with a description of the dogs, and their respective micro-chip numbers.

Conway testified that her standard practice in breeding dogs was to place a micro-chip under the skin of the dog's shoulder. *Id.* at 92. This micro-chip is permanently imbedded in the dog and it operates similarly to a scanner at a supermarket. *Id.* Each micro-chip is assigned a certain number that only correlates with that micro-chip. *Id.* at 93. Moreover, Conway stated that she placed a micro-chip in each of the subject dogs involved in this litigation with the yellow Labrador retriever having a micro-chip number of 012769333, and the male chocolate Labrador retriever having a micro-chip number

---

[5] Conway arrived at a total amount of five thousand eighteen dollars based upon the cost of each dog, the cost of airfare, two new shipping crates, and health certificates. (N.T. 9/9/13 at 97).

of 045259601. *Id.* at 96-97.[6]

After receiving the agreement of sale, Defendant signed said agreement as "Meg Kippler", scanned it, and emailed the agreement back to Conway. Per the terms of the agreement of sale, Defendant was required to tender payment, by way of a cashier's or certified check, before Conway would ship the dogs and crates. (N.T. 9/9/13 at 99). However, Conway stated that she never received said payment. *Id.* at 101. As a result, Conway contacted Defendant to arrange an alternative method of payment as it was already orchestrated that the two Labrador retrievers would be shipped, via air, from Sacramento to Philadelphia in two days. *Id.* at 102. A day later, Conway received a personal check from Defendant.[7] The check was made payable to Conway in the amount of five thousand forty dollars ($5,040.00).[8]

The Commonwealth proffered a copy of the $5,040.00 check at trial. In the upper left-hand corner of the check was a sticker that read: "Kippler, Waterford, New Jersey."

---

[6] Conway testified that the micro-chip number is also referred to as an "AVID number".

[7] Conway received this check late Saturday afternoon after her bank, Sterling Bank was closed for the day. Since Conway's drive to Sacramento Airport would take her five hours, she had to leave early Monday morning before her bank would open, thus Conway testified she did not have a chance to deposit the check before shipping the two dogs in the shipping crates. (N.T. 9/9/13 at 101).

[8] At the trial, Conway was perplexed as to why this check was written out for five thousand forty dollars when the agreed purchase price was for five thousand eighteen dollars.

Upon returning home from Sacramento, Conway tried to deposit the check but was informed by her bank, Sterling Bank, that there were insufficient funds in the account to cover the check. *Id.* at 104. Conway thereafter contacted Defendant who agreed to send a cashier's check, by way of FedEx, overnight; however, Conway never received said check. *Id.* at 106. Accordingly, Conway contacted Defendant again who assured Conway that she would send a personal check via FedEx. This check was sent to and received by Conway's bank, however it was sent to her bank's branch in Spokane, Washington.[9] The check was made payable to Conway in the amount of five thousand one hundred ninety dollars ($5,190.00). Like the previous check tendered by Defendant, this second check was also not honored based upon insufficient funds in the account. *Id.* at 108.

Thereafter, the Bank sent this second check to Conway. This check was admitted into evidence by the Commonwealth as "Commonwealth's Exhibit 6." The printed writing in the upper left-hand corner of the check was covered with yellow "white-out." Conway testified that upon receipt of the check, she held the check up to a window with a bright light shining through and was able to read the printed writing covered up by the "white-out." She deciphered the printed writing to say: "Anthony

_____

[9] Conway testified that her "home" bank branch was located in Oregon. (N.T. 9/9/13 at 108).

[FM-11-14]

Gadaleta, Pohopoco Drive, Lehighton, Pennsylvania."[10]

Subsequently, Conway went to her local police department who in turn contacted the Pennsylvania State Police in Lehighton, and more specifically, Pennsylvania State Trooper Nicolas De La Iglesia. After receiving the information supplied to him by Conway, Trooper De La Iglesia, (hereafter "Trooper"), obtained a search warrant and executed this warrant at Defendant's residence on September 23, 2010. (N.T. 9/9/13 at 136). The Trooper brought a micro-chip scanner to Defendant's residence, located at 974 Pohopoco Drive, Franklin Township, for the purpose of trying to find the two Labrador retrievers. *Id.* at 137.

When the Trooper executed the search warrant,[11] the only person present at the residence, besides the police, was the Defendant. The Trooper accordingly approached the Defendant and informed her that he had a search warrant and is looking for two dogs from Oregon. *Id.* at 139. Despite the Defendant insisting that the dogs were not at her property, the Trooper began scanning all the dogs located on the property. The Trooper began his search for the dogs in the kennels located outside of

---

[10] Conway did state that she never received payment for the two Labrador retrievers and two shipping crates. (N.T. 9/9/13 at 112).

[11] The Trooper testified that he was not alone when he executed the search warrant as Corporal Gross, Trooper Patrick Finn, Corporal Kathleen Tamerantz, and the Chief Police of Franklin Township Thomas Beltz were also present at Defendant's residence. (N.T. 9/9/13 at 137).

[FM-11-14]

6

the residence. Eventually, the Trooper found a chocolate Labrador retriever inside the building and ran the micro-chip scanner over the back shoulder area of the dog. *Id.* at 140. The micro-chip number of this chocolate Labrador matched the number Conway provided the Trooper for the chocolate Labrador Conway sent to Defendant, that being 045259601. *Id.* at 141.[12]

After finding the chocolate Labrador, the Trooper walked outside with the dog and informed the other officers that he found one of the dogs. *Id.* at 141-42. Upon hearing this, the Defendant led the Trooper to the yellow Labrador, which the Trooper confirmed through a positive micro-chip match as the other Labrador in question.[13]

Thereafter, Defendant informed the Trooper that the call name for the chocolate Labrador was Winston, and Romeo for the yellow Labrador retriever. (N.T. 9/9/13 at 146). Further, the Defendant directed the Trooper to the shipping crates for each dog.

The Trooper testified that subsequent to finding the dogs and shipping crates, he entered Defendant's residence and went to her office in the den. *Id.* at 148. In the top drawer of the

---

[12] The Trooper also took a picture of the micro-chip scanner depicting the micro-chip number. This picture was admitted into evidence as Commonwealth's Exhibit 9.

[13] As the Trooper did with the chocolate Labrador, the Trooper took a picture of the micro-chip scanner that showed that the micro-chip number matched the number Conway provided the Trooper for the yellow Labrador. (See, Commonwealth's Exh. 10).

desk inside the office, the Trooper found FedEx shipment slips with the name "Kippler" inscribed on them.[14] Moreover, the Trooper discovered email correspondences from the Defendant, under the pretense of Meg Kippler, addressed to Conway herself.[15] Further, the Trooper found a deposit slip for an account in the name of Defendant's husband, Anthony Gadaleta. *Id.* at 153. The account number of the deposit slip matched the account number of the two personal checks Conway received from Defendant as payment for the dogs.

Lastly, the Trooper stated he found the sales contract between Conway and Defendant in Defendant's desk, along with

---

[14] The Trooper found three FedEx shipment air bills dated August 6, 2010, August 18, 2010, and August 24, 2010, respectively. The shipment bills had the sender's name as "Meg Kippler" or "Kippler" and Conway as the recipient for two of the packages and Sterling Savings Bank in Spokane, Washington as the recipient of the third package. (N.T. 9/9/13 at 155-56).

[15] Commonwealth's exhibit 15 is an email dated July 30, 2010, from Conway sent to the email address of 1265chase@gmail.com. This email address of 1265chase@gmail.com is the email address listed for "Meg Kippler" in the agreement of sale. *See,* Commonwealth's Exh. 4. The email is titled: "Guess you and Ron have decided yes???". The email was verified as being sent by Conway herself as the email address of the sender was forlabs@centurytel.net, which is Conway's email address. (N.T. 9/9/13 at 90). In this email, addressed to "Meg", Conway sets forth all the relevant information the Defendant would need in order to retrieve the two Labrador dogs at Philadelphia Airport. Additionally, this email reiterates the total cost of the dogs and how payment must be made. Lastly, the email ends with "Best, Cheri" and Conway's phone number.

The Commonwealth also admitted into evidence another email found in Defendant's desk, labeled Commonwealth's exhibit 20. This email, dated August 24, 2010, is from Conway, as evidenced by the email address of forlabs@centurytel.net, and the recipient is "apple" with a corresponding email address of 1265chase@mail.com. The contents of this email are in regards to Conway not receiving the payment sent via FedEx. The email contains a FedEx tracking number, 848489106264, which is the tracking number for the FedEx shipment bill found on Defendant's desk, labeled Commonwealth's exhibit 18.

Below this email is the original message from "apple", with an email address of 1265chase@gmail.com, to Conway regarding the FedEx shipment of payment. Said email is signed "Ron."

[FM-11-14]

8

documents relating to the dogs themselves, namely their pedigree and medical records. *Id.* at 158.

At trial, the Commonwealth also called Defendant's ex-husband, Anthony Gadaleta who testified that only he and the Defendant resided in the residence during the timeframe at issue in this case. (N.T. 9/10/13 at 24).[16] Moreover, Anthony Gadaleta asserted that he had no involvement with Defendant's breeding business, and where the Trooper found the FedEx shipment bills and email correspondences was Defendant's private office, an office he never used. *Id.* at 25-26. Further, Anthony Gadaleta avowed that he never entered into a sales contract with Conway, nor ever heard of her before this criminal case.

Further, Mr. Gadaleta acknowledged that the deposit slip found in Defendant's desk was a deposit slip from a bank account he had with First Commonwealth Bank and the account number of this deposit slip corresponded to the account number on the two personal checks Conway received as payment for the two dogs and shipping crates. However, Anthony Gadaleta asserted that he never authored these checks nor authorized anyone to issue these checks on his behalf. *Id.* at 29-30.[17] In addition, the

---

[16] During the timeframe at issue in this case Defendant and Anthony Gadaleta were married; however, subsequently their marriage dissolved.

[17] Anthony Gadaleta also stated that Defendant's sister lives in Waterford, New Jersey. (N.T. 9/10/13 at 40). The sticker placed in the upper left-hand

signature on the two checks at issue are not the signatures of Anthony Gadaleta as stated by him and supported by Commonwealth's exhibit 25, which is a copy of Anthony's Gadaleta driver's license depicting his true signature.

Lastly, Anthony Gadaleta stated that subsequent to Defendant's arrest in this matter he found six cell phones around Defendant's desk. When Anthony Gadaleta met with Trooper De La Iglesia on March 17, 2011, he turned over these cell phones to the Trooper. Thereafter, the Trooper applied for and received a search warrant to examine the contents of the phones. On one of the cell phones the Trooper discovered a phone number, labeled as an outgoing call, made to a phone number belonging to Conway.

As a result of the investigation conducted by the Commonwealth, a criminal complaint was filed against the Defendant on August 24, 2010. The Defendant was charged with one count of theft by deception, one count of receiving stolen property, and two counts of issuing a bad check. A jury trial began on September 9, 2013, and after hearing the above stated evidence, a jury found the Defendant guilty on all charges.

Thereafter, a pre-sentence investigation report was ordered. Upon completion of this report, the Court sentenced

---

of the first check Conway received from Defendant, the check in the amount of $5,040.00, listed Meg Kippler's address Waterford, New Jersey.

[FM-11-14]

10

Defendant on November 22, 2013, to a total sentence of not less than twelve months nor more than twenty-four months in a state correctional institution, followed by one year of probation.

Subsequently, on December 16, 2013, Defendant appealed her judgment of sentence with her Concise Statement of Matters Complained of on Appeal being filed on January 6, 2014. In her Concise Statement, Defendant raises four issues. These issues are:

1) That the court erred in allowing testimony over objection concerning the contents of the cell phones received from Anthony Gadaleta months after the search of the residence;

2) That the verdict is contrary to law in that there was no evidence connecting the person known to the victim as Meg Kipler (sic) with Patricia Gadaleta;

3) That the verdict is contrary to law in that there is absolute no evidence the party that issued the checks with insufficient funds was Patricia Gadaleta; and

4) That the verdict is contrary to the law in that there is absolutely no evidence the email address referenced in the communications between seller and buyer was that of the defendant Patricia Gadaleta. The party with that email address was never identified.

The Court will address these issues accordingly.

## DISCUSSION

In evaluating Defendant's issues raised on appeal, three of

[FM-11-14]
11

the four issues presented are of the same legal issue, that being challenges to the sufficiency of the evidence presented by the Commonwealth. Accordingly, the Court will address these three issues together after first undertaking the merits, or lack thereof, of Defendant's first issue raised on appeal.

## I. ADMISSION OF TESTIMONY

Defendant's first issue raised on appeal contends that the Court erred in allowing testimony, over Defendant's objection, regarding the contents of certain cell phones received by the Trooper from Anthony Gadaleta months after executing the search warrant. Anthony Gadaleta testified that on March 17, 2011, he met with Trooper De La Iglesia at his and Defendant's residence. At this meeting, Anthony Gadaleta handed the Trooper six cell phones that he found around Defendant's desk. Moreover, Anthony Gadaleta asserted that none of these cell phones belonged to him.

The Trooper, upon receiving the cell phones, placed them into a sealed envelope. Thereafter he applied for and obtained a search warrant in an effort to ascertain certain information that may be on the phones. In examining the dialed calls of one of the phones the Trooper found a call was placed to Conway.

Defendant's Concise Statement informs the Court that Defendant is challenging the admissibility of the testimony regarding the cell phones. In evaluating this issue, the Court

[FM-11-14]
12

finds itself speculating as to the specific nature of Defendant's appeal. The Court is unsure if Defendant's objection to the testimony of the cell phone is founded upon a chain of custody issue, foundation or lack thereof argument, or if Defendant is claiming that the testimony about the cell phone was irrelevant and thus should have been prohibited.

The courts have previously addressed the effect of a "too general" concise statement. "When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Butler*, 756 A.2d 55, 57 (Pa. Super. Ct. 2000) (brackets and quotation marks omitted). "When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." *In re Estate of Daubert*, 757 A.2d 962, 963 (Pa. Super. Ct. 2000). In other words, a concise statement which is too vague to allow the court to identify the issue raised on appeal is the functional equivalent of no concise statement at all.

Since Defendant has appealed the testimony in general as it relates to the cell phones, this Court is left conjecturing as to the specific nature of the exact issue Defendant is raising on appeal. Consequently, this Court finds that Defendant's first issued raised in her Concise Statement too vague and

therefore should be deemed waived.

Notwithstanding such, and if the Honorable Superior Court finds Defendant was specific enough in her Concise Statement, the Appellate Court should still dismiss Defendant's first issue raised based upon a lack of merit. During the trial, the Court conducted sidebar conversations with the Assistant District Attorney and Defense Counsel in regards to the cell phones. For purposes of this appeal, the Court surmises that Defendant is appealing the admission of the cell phones based upon three legal principles: relevancy, foundation, and chain of custody. The Court will address each issue accordingly.

The standard of review on the challenge of the admissibility of evidence is as follows:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

*Commonwealth v. Levanduski*, 907 A.2d 3, 13-14 (Pa. Super. Ct. 2006)(quoting *Commonwealth v. Drumheller*, 570 Pa. 117, 808 A.2d 893, 904 (2002), *certiorari denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003)).

Defendant's relevancy and foundation objections at trial were grounded upon the same argument, that being the

[FM-11-14]
14

Commonwealth cannot establish that the cell phones found by Anthony Gadaleta belonged to the Defendant. Moreover, Defense Counsel argued to the Court that the Commonwealth cannot prove that Defendant made any of the dialed calls.

Pennsylvania Rule of Evidence 901 mandates that authentication is required prior to the admission of evidence. Pa.R.E. 901. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. *In re F.P.*, 878 A.2d 91 (Pa. Super. Ct. 2005). Pennsylvania Rule of Evidence 901 also states that the foundational requirement of authentication or identification is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Pa.R.E. 901(a). When a party offers evidence contending either expressly or impliedly that the evidence is connected with a person, place, thing, or event, the party must provided evidence sufficient to support a finding of the contended connection. *Commonwealth v. Hudson*, 414 A.2d 1381 (Pa. 1980). Evidence can be authenticated by circumstantial evidence. *Commonwealth v. Collins*, 957 A.2d 237 (Pa. 2008).

In matters of authentication, if the court finds enough support in the record to cause a reasonable person to believe that the evidence is what it purports to be, Pennsylvania Rule of Evidence 901 is satisfied and the weight to be given to the

[FM-11-14]
15

evidence is left to the jury. *Commonwealth v. Nolly*, 138 A. 836 (Pa. 1927); *Commonwealth v. Pollock*, 606 A.2d 500 (Pa. Super. Ct. 1992).

The Commonwealth, in establishing a foundation that the cell phones were those of the Defendant, proffered the testimony of Anthony Gadaleta. Mr. Gadaleta testified that after the Defendant was arrested he found the cell phones in Defendant's office and more specifically around Defendant's desk area. Moreover, Anthony Gadaleta asserted that none of the cell phones were his nor did he ever use any of these phones.[18] Additionally, it was stated by Anthony Gadaleta that the only persons to have access to Defendant's office was the Defendant and himself, although he never used that office. Based upon such testimony, the Court found a proper foundation was established by the Commonwealth.

Consequently, the Court disagreed with Defendant's argument that such testimony regarding the cell phones was irrelevant because the jury could only speculate as to who placed such calls. By establishing that the cell phones belonged to the Defendant and that only Defendant had access to said phones, it was within the jury's province to infer that Defendant placed those calls. The fact that the Commonwealth could not present

---

[18] Anthony Gadaleta stated he only had one cell phone, which was tied to his employment.

direct evidence demonstrating that Defendant placed the call to Conway or the fact that the cell phones were turned over to the Trooper months after the police executed the search warrant go to the weight of the testimony, not its admissibility.

After finding that the Commonwealth established a proper foundation to authenticate and identify the cell phones, the Court also ruled that the testimony regarding these cell phones was relevant. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact. Pa.R.E. 401; *Commonwealth v. Lesko*, 15 A.3d 345 (Pa. 2011). The crux of the Commonwealth's case was establishing that Meg Kippler was in reality the Defendant. A phone call made to Conway herself from a cell phone found in Defendant's personal office that only her and Anthony Gadaleta had access to, along with Mr. Gadaleta asserting that he never used that cell phone, are facts that assists the Commonwealth in establishing, albeit circumstantially, that the Defendant portrayed herself to Conway as Meg Kippler.

Notwithstanding that evidence might be relevant, evidence can be inadmissible if such evidence is unfairly prejudicial. Pennsylvania Rule of Evidence 403 states that relevant evidence may be excluded "if its probative value is outweighed by . . .

unfair prejudice . . . ." Pa.R.E. 403(a). Defendant argued at trial that permitting the testimony about the cell phones would be unfairly prejudicial due to the speculative nature of the testimony. As just stated above, this Court did not find the testimony regarding the cell phones to be speculative; the phones were found in Defendant's personal office where only she and Anthony Gadaleta had access. Additionally, Anthony Gadaleta avowed that he never used the cell phones he found at Defendant's desk. Although this Court does not disagree with Defendant's claim that such testimony may be prejudicial, as the Court would presume any evidence offered by the Commonwealth would be prejudicial to a defendant, the Court does not concur with Defendant's assertion that the testimony was unfairly prejudicial such that the probative value was outweighed by the prejudicial nature of the testimony. Consequently, the Court ruled that such testimony was relevant and permitted.

Defendant's other objection at trial to the testimony regarding the cell phones being permitted was founded upon a chain of custody objection. The "chain of custody" rule comes from the principle that real evidence must be authenticated prior to its admission into evidence. *UGI Utilities, Inc. v. Unemployment Compensation Board of Review*, 851 A.2d 240 (Pa. Cmwlth. Ct. 2004). The rationale for this threshold requirement is the need to establish that the item to be introduced is what

[FM-11-14]
18

it purports to be. The ultimate question is whether the authentication testimony is sufficiently complete so as to persuade the court that it is improbable that the original item has been exchanged with another or altered in any material aspect. *See, In re D.Y.*, 34 A.3d 177 (Pa. Super. Ct. 2011)(chain of custody refers to the manner in which evidence was maintained from the time it was collected to its submission at trial).

While the offering party bears the burden of demonstrating some reasonable connection between the proffered exhibit and the true evidence, it need not establish the sanctity of its exhibit beyond a moral certainty. *Commonwealth v. Cugnini*, 452 A.2d 1064 (Pa. Super. Ct. 1982). A complete chain of custody is not required so long as the evidence, direct and circumstantial, establishes a reasonable inference that the identity and condition of the exhibit has remained the same from the time it was first obtained until the time of trial. *Hudson*, 414 A.2d at 1387. Any gaps in testimony regarding the chain of custody go to the weight to be given to the testimony, not to its admissibility. *Commonwealth v. Bolden*, 406 A.2d 333 (Pa. 1979).

In the case at bar, Anthony Gadaleta testified that upon finding the cell phones around Defendant's desk he turned them over to Trooper De La Iglesia on March 17, 2011. The Trooper, upon receiving these phones, placed them in an envelope and

[FM-11-14]
19

sealed the envelope. The Trooper thereafter obtained a search warrant and examined the contents of the phones. From his examination of the cell phones, the Trooper found that a phone call was made to a number later determined to be Conway's phone number. Accordingly, the Commonwealth set forth a proper chain of custody to permit the Trooper to testify regarding the contents of the phones. Thus Defendant's first issue raised on appeal should be dismissed.[19]

## II. SUFFICIENCY OF THE EVIDENCE

Defendant's second, third, and fourth issues raised on appeal are all challenges to the sufficiency of the evidence. The standard of review to a challenge of the sufficiency of the evidence is well-settled:

---

[19] If the Appellate Court does determine that such evidence regarding the cell phones should have been prohibited, this Court sees such error as harmless error. In *Commonwealth v. Moore*, 937 A.2d 1062 (Pa. 2007), the Supreme Court of this Commonwealth reaffirmed that an error may be considered harmless only when the Commonwealth proves beyond a reasonable doubt that the error could not have contributed to the verdict. Whenever there is a reasonable possibility that an error could have contributed to the verdict, the error is not harmless. *Commonwealth v. Passmore*, 857 A.2d 697, 711 (Pa. Super. Ct. 2004). An error may be deemed harmless, *inter alia*, where the properly admitted and uncontradicted evidence of guilty was so overwhelming and the prejudicial effect of the error was insignificant by comparison that the error could not have contributed to the verdict. *Moore*, 937 A.2d at 1073. Harmless error exists when the error did not prejudice the defendant, the prejudice was *de minimis*, or the erroneously admitted evidence was merely cumulative of other untainted evidence, which was substantially similar to the erroneously admitted evidence. *Passmore*, 857 A.2d at 711.
As set forth below in Defendant's second, third, and fourth issues raised on appeal, the evidence presented by the Commonwealth was of such an overwhelming nature that if the Appellate Court were to rule that the admission of the testimony regarding the cell phones was an error such error was only *de minimis*. In examining the record as a whole, the testimony about the cell phone was merely cumulative in the Commonwealth's pursuit in proving that Defendant falsely portrayed herself to Conway as an individual named Meg Kippler. Therefore, Defendant's first issue raised on appeal should be dismissed.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (internal citations, footnotes, and quotation marks omitted). Given the standard the Court must apply to a sufficiency of the evidence challenge, the Court will now address each issue raised by Defendant.

### a) Lack of evidence connecting the person known to the victim as Meg Kippler with Patricia Gadaleta

Defendant's first challenge to the sufficiency of the evidence argues that the Commonwealth failed to present any evidence establishing that the person known to Conway as Meg Kippler was in fact the Defendant herself. In essence, Defendant's challenge goes to the core of the Commonwealth's case: that the Defendant intentionally and falsely deceived Conway into believing that she, the Defendant, was an individual named Meg Kippler. Notwithstanding Defendant's contention, the Commonwealth presented overwhelming evidence to establish that

[FM-11-14]
21

the person Conway thought was Meg Kippler was in reality the Defendant.

In evaluating the testimony proffered by the Commonwealth, in conjunction with the evidenced submitted, it was established that in July of 2010 Conway spoke to an individual who identified herself as Meg Kippler about the purchase of a Labrador retriever. After several conversations, Conway and this individual, identifying herself as Meg Kippler, reached an agreement whereby Conway would sell one male chocolate Labrador retriever named Winston and one yellow male Labrador retriever named Romeo to this individual purporting to be Meg Kippler. Conway stated that her customary practice in breeding and then selling dogs was to place a micro-chip under the skin of the dog's shoulder, which she did with both dogs. The micro-chip has a specific identification number that only correlates with that micro-chip. The yellow Labrador retriever had a micro-chip number of 012769333, and the male chocolate Labrador retriever had a micro-chip number of 045259601.

Trooper De La Iglesia testified that in executing a search warrant upon Defendant's residence on the report that two stolen Labrador retrievers were located at Defendant's home, he located a chocolate Labrador retriever with a micro-chip number matching the number Conway provided him for the chocolate Labrador she sold to the individual claiming to be Meg Kippler. Thereafter,

the Defendant lead the Trooper to the yellow Labrador and the Trooper subsequently confirmed that this was the other Labrador in question after scanning the dog with the micro-chip scanner.

Furthermore, after finding both Labrador dogs the Defendant told the Trooper that the call name for the chocolate Labrador is Winston, and Romeo is the call name for the yellow Labrador retriever.

The Commonwealth, in supporting its case that the individual identifying herself to Conway as Meg Kippler was in fact the Defendant herself, introduced into evidence the sales agreement between the parties. Conway testified that she emailed the person she thought was Meg Kippler a copy of the sales agreement. Conway verified that the copy of the sale agreement found in Defendant's desk was in fact the agreement she sent "Meg Kippler." Moreover, the agreement of sale sets forth a description of the two dogs including their micro-chip numbers, and was signed by "Meg Kippler."

In addition, the Commonwealth presented both checks that Conway received as purported payment for the two dogs and shipping crates in an attempt to prove that Meg Kippler was in fact the Defendant Patricia Gadaleta. The first check Conway received as payment had a sticker in the upper left-hand corner that read: "Kippler, Waterford, New Jersey." As testified by

Anthony Gadaleta, Defendant's sister resides in Waterford, New Jersey. Moreover, this check was made payable to Conway.

The second check the Commonwealth introduced into evidence was the check received by Conway's bank branch in Spokane, Washington. In the upper left-hand corner of this check, a check also made payable to Conway, was yellow white-out. Per Conway's testimony, upon receiving this check from her bank branch, she held it up to a bright light and was able to read the printed writing underneath the white-out. Conway deciphered the printed writing to say: "Anthony Gadaleta, Pohopoco Drive, Lehighton, Pennsylvania."

Anthony Gadaleta testified that only he and the Defendant resided in the residence during the timeframe at issue in this case. More importantly, upon acknowledging that the checks received by Conway were checks written from his bank account with First Commonwealth Bank, Anthony Gadaleta declared he never authored the checks received by Conway, nor did he authorize anyone to issue such checks on his behalf. Further, Anthony Gadaleta asserted that the signature on both checks at issue is not his signature. In support of Anthony Gadaleta's assertion that the signature on the two checks was not his signature, the Commonwealth introduced a copy of Anthony Gadaleta's driver's license depicting his correct signature.

Further evidence in support of the Commonwealth's contention that Meg Kippler was in reality the Defendant was established by the Trooper testifying that he found three FedEx shipment bills inside the top drawer of Defendant's desk. The name scribed as the sender for all three shipment bills is "Kippler" with Conway being the designated recipient on two of the bills and Conway's bank in Spokane, Washington the recipient of the third package. Moreover, the date of the first check Conway received as payment for the dogs corresponds with the date of the first FedEx shipment bill, a bill that lists Conway as the recipient. Conway testified that she did in fact receive this check.

Similarly, the third FedEx shipment bill was dated August 24, 2010, which matches the date on the second check in this case. Additionally, as just stated, the recipient on this FedEx shipment bill was Sterling Savings Bank in Spokane, Washington. Conway testified that the second check was received by her bank, Sterling Savings Bank in Spokane, Washington.

Lastly, the Trooper stated he found in Defendant's desk documents relating to the dogs themselves, more specifically the pedigree of the dogs and their corresponding medical records.

The jury, upon listening to the testimony of Conway and Anthony Gadaleta found their testimony to be credible. The determination of credibility of a witness is within the

[FM-11-14]
25

exclusive province of the jury. *Commonwealth v. Seese*, 517 A.2d 920, 923 (Pa. 1986).

Defendant's argument that the Commonwealth has failed to establish that the Defendant portrayed herself to Conway as Meg Kippler intimates that the Court should examine the testimony and evidence presented by these two witnesses mutually exclusive of each other. Although Defendant sought of the jury, and now seeks on appeal to have the Appellate Court evaluate each piece of evidence in a vacuum, the jigsaw puzzle the Commonwealth presented in establishing its case was not complete until all evidence and testimony was presented and the jury was able to review such evidence in concert with one another. In other words, a jigsaw puzzle is complete once all the pieces are in place and the puzzle depicts the picture on the box. Here, once all the pieces of evidence were presented by the Commonwealth, the jigsaw puzzle, as a whole, depicts the Defendant falsely portraying herself to Conway as an individual named Meg Kippler.

### b) *No Evidence that the Defendant was the party that issued the checks with insufficient funds*

Conway testified that throughout her various modes of corresponding with the Defendant, she, Conway, believed she was communicating with a woman named Meg Kippler and her husband Ron. Such testimony is supported by the agreement of sale between Conway and the Kipplers where in the agreement of sale

the Kipplers' address is listed as 1613 Conrad Avenue, Waterford, New Jersey 08089; in addition, the agreement of sale sets forth the contract price for the two Labrador dogs, shipping crates, and other expenses necessary to ship the dogs from Sacramento to Philadelphia. This agreement of sale was admitted into evidence.

At the trial, the Commonwealth presented both checks Conway received as payment for the two Labrador dogs and shipping crates. The first check, issued to Conway, had a sticker in the upper left-hand corner that contained the name "Kippler" and a Waterford, New Jersey address. As stated by Anthony Gadaleta, Defendant's sister resides in Waterford, New Jersey.

The second check proffered by the Commonwealth, Commonwealth's exhibit six, was also made out to Conway and had yellow white-out covering the printed writing in the upper left-hand corner. Per Conway's testimony, upon receiving the second check from her bank's branch in Spokane, Washington, she was able to hold it up to a bright light and read the printed writing the white-out was covering. Said printed writing under the white-out stated: Anthony Gadaleta, 974 Pohopoco Drive, Lehighton, PA 18235.

In proving that the Defendant issued these two checks, the Commonwealth offered the testimony of Anthony Gadaleta, who was Defendant's husband during the timeframe in question. Anthony

[FM-11-14]
27

Gadaleta testified that he did not issue either of the checks nor did he authorize anyone to issue such checks on his behalf. Moreover, Anthony Gadaleta stated that the signature on both checks was not his; such testimony was supported by a copy of Anthony Gadaleta's driver's license depicting his actual signature. Further, the jury in finding Anthony Gadaleta credible, accepted his testimony as true insofar as he never entered into a contract with Conway for the purchase of two Labrador dogs and shipping crates.

Additionally, Anthony Gadaleta asserted that where the Trooper found a deposit slip from his bank account with First Commonwealth Bank, that being in Defendant's desk, only the Defendant and he had access to this area of the home.

Lastly, Trooper De La Iglesia testified that he found three FedEx shipment bills located in Defendant's desk. The listed recipient on Commonwealth's exhibit seventeen is Conway herself, with the shipment bill being dated August 8, 2010. The first check at issue in this case is date August 8, 2010, a check that Conway herself received.

Commonwealth's exhibit nineteen, another FedEx shipment bill dated August 24, 2010, indicated that the recipient was Sterling Savings Bank located in Spokane, Washington. The second check the Defendant sent Conway is dated August 24, 2010,

with said check being received by Conway's bank, Sterling Savings Bank, in Spokane, Washington.[20]

For these reasons stated, this Court finds there is voluminous evidence to support the jury's finding that the Defendant issued the two checks without insufficient funds to cover them.

### c) Lack of evidence that the email address referenced in the communications between seller and buyer was that of the Defendant

Defendant's final issue raised on appeal suggests that there was insufficient evidence to establish that the email address referenced in the communications between Conway and who she believed was Meg Kippler belonged to the Defendant herself. Upon examining the evidence proffered by the Commonwealth, in conjunction with the testimony, the Court finds this issue meritless.

The Court first notes that the correspondences Defendant is referring to are the emails the Trooper found in Defendant's desk. Anthony Gadaleta testified that this desk was located in Defendant's office. Moreover, he never did work in Defendant's

---

[20] Although both checks were not written for the exact contract price, such checks were only written for an amount slightly greater than the original contract price. This Court finds the two issued checks to be within such a price range to allow the jury to conclude that both checks were written by the Defendant for payment of the two dogs, shipping crates, and other expenses associated with shipping the dogs.

office and no one besides the Defendant or him had access to this room.

Further, the two email addresses reflected on these correspondences are: forlabs@centurytel.net, and 1265chase@gmail.com. Conway testified that her email address is forlabs@centurytel.net. The agreement of sale lists the buyer's email address for an individual named Meg Kippler as 1265chase@gmail.com. The testimony proffered established that Conway sent the agreement of sale to Defendant by way of an email thinking she, Conway, was sending the agreement to Meg Kippler. Defendant, upon receiving the agreement of sale signed the agreement as Meg Kippler, scanned it, and emailed the agreement back to Conway. A copy of the agreement of sale was found by the Trooper in Defendant's desk.

Lastly, the contents of the correspondences led the jury to conclude that the email address of 1265chase@gmail.com was the email address Defendant used in communicated with Conway. The first email admitted into evidence by the Commonwealth, Commonwealth's exhibit 15, is from Conway. In this email, addressed to "Meg", Conway sets forth all the relevant information the Defendant would need in order to retrieve the two Labrador dogs from the Philadelphia Airport. Further, the price listed in this email mirrored the total cost for the dogs and shipping crates as stated in the agreement of sale.

[FM-11-14]
30

The Commonwealth also admitted into evidence another email found in Defendant's desk, labeled Commonwealth's exhibit twenty. This email, dated August 24, 2010, is from Conway as evidenced by the sender's email address of forlabs@centurytel.net. The recipient of this email was "apple" with a corresponding email address of 1265chase@mail.com. The contents of this email are in regards to Conway not receiving the payment that was supposed to be delivered by FedEx. The email contains a FedEx tracking number, 848489106264, which is the tracking number for the FedEx shipment bill labeled Commonwealth's exhibit eighteen. Said FedEx shipment bill was also found on Defendant's desk.

Taking into consideration the standard the Court must apply, that being examining the evidence in the light most favorable to the Commonwealth, and in consideration of the totality of the evidence presented by the Commonwealth in establishing that Defendant used the email address of 1265chase@gmail.com in communicating with Conway, Defendant's issue is meritless and should be dismissed.

## CONCLUSION

Based upon the foregoing, this Court respectfully asks that Defendant's issues raised on appeal be dismissed as being fabricated from whole cloth and meritless. Accordingly, this

[FM-11-14]
31

Court respectfully recommends that the jury verdict be allowed to stand and that this Order of Court dated November 22, 2013, imposing upon Defendant a period of incarceration in a state correctional institution of not less than twelve months nor more than twenty-four months, followed by one year of state probation, with the Defendant receiving one hundred sixty-nine days credit against her sentence for time already served, be affirmed.

BY THE COURT:

Joseph J. Matika, J.

[FM-11-14]
32