J-S14019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
  : PENNSYLVANIA
         Appellee : 
  :
    v. :
  :
JOSE JAVIER VASQUEZ :
  :
        Appellant : No. 96 EDA 2019

Appeal from the Judgment of Sentence Entered November 30, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007339-2016


COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
  : PENNSYLVANIA
         Appellee : 
  :
    v. :
  :
JOSE JAVIER VASQUEZ :
  :
        Appellant : No. 102 EDA 2019

Appeal from the Judgment of Sentence Entered November 30, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007340-2016


BEFORE: BOWES, J., KING, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KING, J.: **FILED MAY 19, 2020**

    Appellant, Jose Javier Vasquez, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for two counts of aggravated assault.[1] We reverse Appellant's

---

[1] 18 Pa.C.S.A. § 2702(a).

convictions, vacate the judgment of sentence, and remand for a new trial.

In its opinion, the trial court accurately set forth the relevant facts of this case as follows:

> In October of 2014, Appellant was living with [J.R.], with whom he had an on-and-off relationship, dating back to 2010. [J.R.] had a two-year-old daughter…and 11-month-old twins…, none of whom were Appellant's daughters.
>
> On Sunday, October 12, 2014, the three girls, having spent the weekend at [the home of the oldest daughter's] grandmother…returned to [J.R.'s] home. [J.R.] fed, bathed, and played with the two babies, before putting them to bed. They seemed fine.
>
> At some point during the night, [J.R.] woke up to find Appellant had left their bed. She left the bedroom and found the door to the three girls' bedroom open, which was unusual, since she closes it to keep [her] two-year-old…from wandering. [J.R.] then went into the bathroom where she found Appellant with a rolled up $100 bill and white powder on the toilet tank lid, which she believed to be heroin.
>
> [Appellant] said he thought someone had been trying to get in [the house]. They went downstairs and he showed her a basement door with holes that he had braced. [J.R.] went back to bed and was awakened when the alarm went off. The police responded to the home a short time later. [J.R.] observed additional holes in the door. The police checked the property, then left. She checked the children and observed that the twins' hair seemed to be wet, which struck her as unusual. When she asked Appellant if he had gone into the children's room, he said he had and gave the twins water because they appeared thirsty.
>
> On October 13, 2014, at around 10:00 AM, [J.R.] checked on the twins and saw that they were still sleeping, which was also unusual. Their bottles were not in their bed, but were downstairs by the sink, which was also unusual. When she tried to give them their bottle, they wouldn't wake up. She attempted to wake them without success.

[J.R.] asked Appellant to drive them to the hospital. He suggested splashing water on the children's faces, but they did not respond to that. So [J.R.] again asked Appellant to take them to the hospital. As they prepared to go, the twins were placed in their car seats and [J.R.] observed Appellant blowing marijuana smoke in their faces.

When they arrived at the hospital, Appellant did not go in with [J.R.] and the children, but only came in later. At the hospital, the twins were diagnosed as under the influence of drugs, which diagnosis was confirmed by positive drug screens for opiates and marijuana. Narcan was then administered to both children. They remained in the hospital for two days.

When asked how the children might have gotten drugs, [J.R.] failed to disclose to medical personnel at the hospital and police that Appellant with whom she lived was a user of controlled substances. As a result, she was subsequently charged and entered a plea of guilty in May of 2015 to two counts of endangering the welfare of a child [("EWOC")].

(Trial Court Opinion, filed June 20, 2019, at 2-3) (internal citations omitted).

Procedurally, the Commonwealth charged Appellant at two docket numbers (one per each victim) with possession of a controlled substance with the intent to deliver, attempted murder, aggravated assault, recklessly endangering another person, simple assault, EWOC, and conspiracy.[2] Prior to trial, the Commonwealth moved to preclude the introduction/mention at trial of a polygraph examination J.R. underwent, as well as any statements J.R. allegedly made prior to, during, or after the polygraph examination. On June 25, 2018, the court heard argument on the Commonwealth's motion. During

_____

[2] The Commonwealth later *nolle prossed* all charges except for aggravated assault.

argument, the parties acknowledged the general law of prohibiting the mention of a polygraph examination or introduction of the results of a polygraph examination at trial. Nevertheless, Appellant alleged that **prior** to the polygraph examination, J.R. admitted to the polygraph examiner that **she** had given drugs to the twins. Appellant argued J.R.'s "admission" was admissible at trial for impeachment purposes. Appellant further agreed that he would not reference the polygraph examination itself or bring up the results of the polygraph examination (*i.e.*, whether deception was indicated); Appellant sought only to admit J.R.'s "admission." Following argument, the court granted the Commonwealth's motion to preclude, stating the polygraph examination and J.R.'s alleged pre-examination statement were so "intrinsically intertwined" that it could not separate the pre-examination statement from the context of the polygraph. (**See** N.T. Pre-Trial Motion Hearing, 6/25/18, at 6-11).

The next day, the court revisited its ruling based on the Commonwealth's concession that the entire case rested on J.R.'s testimony implicating Appellant. The court asked the parties if J.R.'s alleged pre-examination statement could be severed from the context of the polygraph examination. The Commonwealth disputed that J.R. definitively made the alleged admission during the pre-examination and suggested it was unclear from the written polygraph examination report whether J.R. made the alleged admission in the pre-examination or during the actual polygraph. In any

event, the Commonwealth maintained J.R.'s alleged statement was inadmissible per the general law in Pennsylvania disapproving of references to polygraph examinations at trial. After hearing argument from the parties for a second time, the court affirmed its prior ruling, again stating that J.R.'s alleged admission was "sufficiently intertwined" with the polygraph process such that the statement could not be explored without discussion of the polygraph. (*See* N.T. Pre-Trial Motion Hearing, 6/26/18, at 38-52).

On June 27, 2018, Appellant proceeded to a jury trial.[3] The Commonwealth presented only two witnesses: J.R. and Detective Kimberly Boston. During her testimony, J.R., *inter alia*, recounted the events of October 12-13, 2014. Significantly, J.R. denied that she gave the children any drugs. J.R. admitted that she did not disclose to medical personnel at the hospital or to police that Appellant was a drug user; and J.R. pled guilty to two counts of EWOC in connection with that omission. (*See* N.T. Jury Trial, 6/27/18, at 37-96). During Detective Boston's testimony, the Commonwealth introduced, *inter alia*, three statements J.R. gave to police during the investigation on November 5, 2014, November 10, 2014, and November 21, 2014, respectively. While the statements were inconsistent regarding the extent to which J.R. implicated Appellant in the crimes, the statements remained

_____

[3] Following an appropriate colloquy, the court permitted Appellant to proceed *pro se* at trial, with the assistance of stand-by counsel.

consistent concerning J.R.'s denial of her role in the offenses. (*See* N.T. Jury Trial, 6/28/18, at 31-52).

Before the close of the Commonwealth's case-in-chief, the court held a charging conference, during which Appellant specifically requested a "*crimen falsi*" jury instruction concerning J.R.'s guilty plea to EWOC. The court denied Appellant's request, stating EWOC is not inherently a crime of dishonesty, even though the factual predicate for J.R.'s guilty pleas involved being dishonest. (*See* N.T. Jury Trial, 6/27/18, at 150-52).

Appellant testified in his own defense at trial and, *inter alia*, expressly denied any role in the offenses. Rather, Appellant maintained he looked out for the twins' well-being by driving them to the hospital when J.R. noticed they were ill and spending the night at the hospital with them. (*See* N.T. Jury Trial, 6/28/18, at 87-123).

At the conclusion of trial, on June 29, 2018, the jury found Appellant guilty of two counts of aggravated assault (causes serious bodily injury). The court sentenced Appellant on November 30, 2018, to consecutive terms of 7½ to 15 years' imprisonment for each offense. Appellant timely filed post-sentence motions on December 10, 2018,[4] which the court denied on December 27, 2018. On January 7, 2019, Appellant timely filed separate

_____

[4] The docket entries indicate that Appellant filed his post-sentence motions on December 11, 2018, but the timestamp confirms Appellant timely filed the post-sentence motions on December 10, 2018.

notices of appeal at each docket. The court subsequently ordered Appellant to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Following the grant of an extension of time, Appellant timely complied. This Court has consolidated the appeals.

Appellant raises the following issues for our review:

> DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION WHEN IT DENIED THE REQUEST OF APPELLANT TO ADMIT EVIDENCE OF THE HIGHLY RELEVANT (AND PRIOR INCONSISTENT) STATEMENT OF THE CO-DEFENDANT [J.R.]?
>
> DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION WHEN IT HELD THAT THE TESTIFYING CO-DEFENDANT'S CONVICTION FOR ENDANGERING THE WELFARE OF A CHILD ("EWOC") DID NOT CONSTITUTE *CRIMEN FALSI* WHERE, UNDER THE FACTS OF THIS CASE, THE EWOC CONVICTION WAS BASED UPON THE FACT THAT CO-DEFENDANT KNOWINGLY AND INTENTIONALLY LIED TO MEDICAL CARE PROVIDERS ABOUT HER INFANT CHILDREN'S INGESTION OF CONTROLLED SUBSTANCES?
>
> IS THE VERDICT OF GUILTY WITH RESPECT TO ALL CHARGES AGAINST THE WEIGHT OF THE EVIDENCE AND SO CONTRARY TO THE EVIDENCE THAT IT SHOCKS ONE'S SENSE OF JUSTICE?
>
> IS THE SENTENCE IMPOSED UNDULY HARSH AND EXCESSIVE UNDER THE CIRCUMSTANCES OF THIS CASE AND AS APPLIED TO APPELLANT?

(Appellant's Brief at 8-9) (internal footnotes omitted).

In his first issue, Appellant argues he sought to introduce at trial a statement J.R. gave to an investigator **prior** to being administered a polygraph examination, in which J.R. **admitted** that she gave drugs to the twins. Appellant asserts he sought to admit **only** the relevant pre-

examination question and answer and conceded that no reference could be made to the actual polygraph examination or the results of the polygraph examination. Appellant emphasizes that J.R. was one of only two Commonwealth witnesses in this case and that the entire case rested on J.R.'s testimony implicating Appellant. Appellant acknowledges the general law that prohibits references to the results of a polygraph examination at trial. Appellant stresses, however, that relevant statements made during a pre-polygraph interview are admissible. Appellant submits that statements made **during** a polygraph examination are also admissible—Appellant contends only the **results** of a polygraph examination are inadmissible. Appellant highlights the trial court's concession in its Rule 1925(a) opinion that it erred by excluding J.R.'s admission, which would have impeached J.R.'s trial testimony denying that she gave the twins drugs. Appellant concludes the court's ruling severely prejudiced his case, and this Court must vacate and remand for a new trial. We agree Appellant is entitled to a new trial under the facts of this case.

Our standard of review of a trial court's admission or exclusion of evidence is well established:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. Montalvo*, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009), *cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted). Our scope of review in cases where the trial court explains the basis for its evidentiary ruling is limited to an examination of the stated reason. *Commonwealth v. Stephens*, 74 A.3d 1034, 1037 (Pa.Super. 2013).

Historically, "[t]he rule in Pennsylvania [was] that reference to a lie detector test or the result thereof which raises inferences concerning the guilt or innocence of a defendant is inadmissible. This rule was established to protect the defendant in a criminal trial and it is based on this Court's refusal to recognize the scientific accuracy or validity of such tests." *Commonwealth v. Cain*, 471 Pa. 140, 155, 369 A.2d 1234, 1241-42 (1977) (internal citations omitted). *See also Commonwealth v. Hetzel*, 822 A.2d 747, 767 (Pa.Super. 2003), *appeal denied*, 576 Pa. 710, 839 A.2d 350 (2003) (explaining general rule that due to well-known unreliability of polygraph tests, our courts uniformly have been reluctant to permit any reference to polygraph examination at trial).

Nevertheless, this Court has stated:

> The polygraph has been acknowledged by the courts of this Commonwealth to be a valuable tool in the investigative process. Its use does not *per se* render a confession involuntary. **A confession is not involuntary merely because it was made in anticipation of, during, or following a polygraph examination**. *See* 89 A.L.R.3d 236, and cases there gathered. In Pennsylvania, an

> inculpatory statement made during a pre-test interview was held admissible in ***Commonwealth v. Cain***, 471 Pa. 140, 1[5]6, 369 A.2d 1234, [1242] (197[7]) [(plurality)] (Opinion of Eagen, J., in support of affirmance).

***Commonwealth v. Smith***, 463 A.2d 1113, 1115 (Pa.Super. 1983) (some internal citations omitted) (emphasis added).

Thus, there have been scenarios where our courts have admitted statements made before, during, or after a polygraph examination, without mention or reference to the actual **results** of the polygraph examination. ***See, e.g., Commonwealth v. Schneider***, 562 A.2d 868 (Pa.Super. 1989), *appeal denied*, 525 Pa. 598, 575 A.2d 564 (1990) (holding court properly denied motion to suppress confession given to police after polygraph examination; explaining statement given after being advised that one has failed lie detector test may be admitted into evidence). ***See also Commonwealth v. Santiago***, 591 A.2d 1095, 1104 n.15 (Pa.Super. 1991) (*en banc*), *appeal denied*, 529 Pa. 633, 600 A.2d 953 (1991) ("***Santiago I***") (noting trial court did not admit appellant's second statement to police at trial "at least in part because the trial court labored under the **false** apprehension that such a statement was inadmissible merely because it was made during a polygraph examination") (emphasis in original). ***Compare Commonwealth v. Brockington***, 500 Pa. 216, 220, 455 A.2d 627, 629 (1983) (holding trial court properly barred admission of **results** of polygraph examination; results of polygraph examination are inadmissible even where parties stipulate to their admission, as stipulation to admissibility cannot enhance reliability of

- 10 -

results of polygraph examination); *Commonwealth v. Handfield*, 34 A.3d 187 (Pa.Super. 2011), *appeal denied*, 617 Pa. 636, 54 A.3d 347 (2012) (holding court did not err in limiting cross-examination of witness concerning **results** of witness' polygraph examination; specifically, appellant had sought to ask witness whether condition of witness' plea agreement was that witness take and pass polygraph examination, whether witness passed or failed polygraph examination, and if witness failed polygraph, did witness still reap benefit of plea agreement); *Commonwealth v. Kemp*, 410 A.2d 870, 872 (Pa.Super. 1979) (reversing and remanding for new trial where Commonwealth introduced testimony that its witness **took and passed** lie detector test, which raised inference that test certified truth of testimony implicating accused; "The inference carried the weight of scientific evidence while in fact that evidence was unreliable").

Instantly, the trial court addressed this issue in its Rule 1925(a) opinion as follows:

> Here, Appellant alleges that it was error for the [c]ourt to preclude testimony and cross-examination as to statements made to a polygraph examiner by Commonwealth witness, [J.R.], in the course of the pre-interview, prior to the actual polygraph examination. Specifically, [J.R.] was asked: "Did you give drugs to these children?" To which she responded: "Yes."
>
> After hearing extensive argument, the [c]ourt granted the Commonwealth's motion *in limine*…
>
> \* \* \*
>
> In this case the [c]ourt was focused on the context of the

statement—given in relation to a polygraph—rather than the statement itself. This was error. The [c]ourt could and should have ruled *in limine* that the witness could be impeached with her prior statement given in the context of questioning by a law enforcement officer, but without mention that the questioning was part of a polygraph examination. Such a solution would have honored Pennsylvania law that the **results** of polygraph examinations are inadmissible, but statements given in relation to or during such examinations are admissible.

In sum, while the multiple statements of [J.R.], including in connection with the polygraph examination, may have presented some logistical issues in presentation of [J.R.'s] admission, and Commonwealth rehabilitation with prior consistent statements, those hurdles were not insurmountable. Because the admission was so significant to the defense theory of the case, and because it could have been introduced without mention of a polygraph exam or results, it was error to exclude [J.R.'s] admission that she gave drugs to the children.

(Trial Court Opinion at 6-8) (internal citations omitted) (emphasis in original).

Initially, we observe that the written polygraph examination report does not make certain whether J.R. answered "yes" to the question "did you give drugs to these children" during the pre-examination interview or during the actual polygraph examination. The report appears to support the Commonwealth's position that J.R. made the alleged admission during the actual polygraph examination.[5] In either scenario, however, we agree with

_____

[5] The written polygraph examination report indicates two relevant polygraph questions were posed to J.R.: (1) "Did you give any of those drugs to those children?" J.R. responded: "Yes"; and (2) "Did you give any of those drugs to those children on that night?" J.R. responded: "No." The report further states, "deception indicated" as to those questions, but does not specify which

- 12 -

the trial court's Rule 1925(a) analysis that the court could have admitted J.R.'s "admission" without reference to the actual polygraph examination or to the results of the polygraph examination. ***See Santiago I, supra***; ***Schneider, supra***; ***Smith, supra***.

Notably, no other testimony/evidence at trial referenced an admission by J.R. to giving the twins drugs. While Appellant attempted to impeach J.R.'s testimony by highlighting J.R.'s prior inconsistent statements to police, those statements were inconsistent only to the extent of detail in which J.R. implicated Appellant in the offenses but consistently denied J.R.'s role in the offenses. ***Compare Commonwealth v. Santiago***, 654 A.2d 1062, 1082 (Pa.Super. 1994) ("***Santiago II***"), *appeal denied*, 541 Pa. 651, 664 A.2d 540 (1995), *cert. denied*, 516 U.S. 995, 116 S.Ct. 532, 133 L.Ed.2d 437 (1995) (explaining statement of Commonwealth witness in pre-polygraph interview, that witness had not seen defendant with gun prior to victim's murder, was contrary to witness' testimony at appellant's trial; statement, therefore, was relevant to enable defense to impeach testimony of key Commonwealth witness; nevertheless, witness' pre-polygraph interview statement was

---

response was deceptive. (***See*** Exhibit A attached to Commonwealth's Brief). The Commonwealth suggests J.R. was "deceptive" in her response to question 1, in which she admitted giving the children drugs. The Commonwealth's suggestion in this regard is nothing more than speculation. Even if the Commonwealth were correct, the **results** of J.R.'s polygraph examination would be inadmissible under prevailing law.

cumulative of other evidence, so prosecution's failure to disclose witness' prior inconsistent pre-polygraph statement did not constitute due process violation under **Brady**[6]). Although we recognize the potential logistical difficulties in introducing J.R.'s statement and the Commonwealth's ability to rehabilitate her, we agree with the trial court's Rule 1925(a) analysis that such "hurdles were not insurmountable." Under these circumstances, the court's evidentiary ruling was error and Appellant is entitled to a new trial. **See Montalvo, supra**.

In his second issue, Appellant argues he sought a ruling that J.R.'s convictions for EWOC constituted *crimen falsi* offenses, *i.e.*, crimes involving dishonesty. Appellant asserts it is undisputed that J.R.'s EWOC convictions were based on her failure to disclose to medical personnel how her children were exposed to drugs. Appellant claims the facts of J.R.'s EWOC convictions involve dishonesty and making false statements. Appellant contends the trial court improperly analyzed only the statutory elements of the crime of EWOC, without also analyzing the underlying facts of J.R.'s convictions. Appellant claims the court's ruling was particularly egregious where the Commonwealth's case hinged on J.R.'s testimony implicating Appellant. Appellant concludes the court erred by ruling J.R.'s convictions did not constitute *crimen falsi* offenses and failing to issue the appropriate jury

---

[6] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

instruction, and this Court should vacate and remand for a new trial. We agree the court's ruling was error.

Our review of this issue implicates the following legal principles:

> For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict, or by plea of guilty or *nolo contendere*, shall be admitted if it involved dishonesty or false statement. Pa.R.E. 609(a). Crimes involving dishonesty or false statement are commonly referred to as *crimen falsi* crimes. *Crimen falsi* involves the element of falsehood, and includes everything which has a tendency to injuriously affect the administration of justice by the introduction of falsehood and fraud.
>
> When deciding whether a particular offense is *crimen falsi*, one must address both the elemental aspects of that offense **and** the conduct of the defendant which forms the basis of the anticipated impeachment. Accordingly, this Court employs a two-step procedure to determine whether a crime is *crimen falsi*. First, we examine the essential elements of the offense to determine if the crime is inherently *crimen falsi*—whether dishonesty or false statement are a necessary prerequisite to commission of the crime. Second, if the crime is not inherently *crimen falsi*, this Court then inspects the underlying facts that led to the conviction to determine if dishonesty or false statement facilitated the commission of the crime. The burden of proof is upon the party offering the conviction during cross-examination.

*Commonwealth v. Davis*, 17 A.3d 390, 395 (Pa.Super. 2011), *appeal denied*, 611 Pa. 678, 29 A.3d 371 (2011) (most internal citations and quotation marks omitted) (emphasis in original).

The Crimes Code defined the offense of EWOC during the relevant timeframe as follows:

### § 4304. Endangering welfare of children

**(a) Offense defined.**—

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if [she] knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S.A. § 4303(a)(1) (effective January 29, 2007 to August 27, 2017).

Instantly, we initially note that the jury heard about J.R.'s EWOC convictions and the factual basis for her convictions at various points throughout trial. Thus, it is undisputed that the court permitted evidence of J.R.'s EWOC convictions at trial. When Appellant specifically requested a "*crimen falsi*" jury instruction at the charging conference, however, the court declined Appellant's request because the statutory elements of EWOC are not "inherently" *crimen falsi*. Indeed, in its Rule 1925(a) opinion, the court stated: "Because there is no element of dishonesty or false statement set forth in the statute, the crime of [EWOC] is not a *crimen falsi*." (Trial Court Opinion at 9).

Nevertheless, the trial court failed to conduct the second part of the two-step analysis, namely, an inspection of "the underlying facts that led to the conviction to determine if dishonesty or false statement facilitated the commission of the crime." **See Davis, supra**. The record makes clear the factual basis for J.R.'s EWOC convictions involved dishonesty or a false statement to medical personnel and police concerning how the twins might have been exposed to drugs. Consequently, the trial court improperly ruled that J.R.'s EWOC convictions did not constitute *crimen falsi* offenses and

should have issued the appropriate jury instruction.[7]  ***See Commonwealth v. Cole***, 2020 WL 400234, 2020 PA Super 12 (filed Jan. 24, 2020) (explaining that in Pennsylvania, witness may be impeached by prior conviction if crime involved dishonesty or false statement; appellant was entitled to jury instruction regarding relevancy of witness' *crimen falsi* convictions, and how jury could utilize that evidence in assessing her credibility).  Accordingly, we reverse Appellant's convictions, vacate the judgment of sentence, and remand for a new trial.[8]

Convictions reversed.  Judgment of sentence vacated.  Case remanded for new trial.  Jurisdiction is relinquished.

---

[7] The Commonwealth concedes the trial court's failure to classify J.R.'s EWOC convictions as *crimen falsi* offenses was improper (***see*** Commonwealth's Brief at 18), but insists the error was harmless because the jury heard about J.R.'s convictions.  Because we have already decided this case warrants a new trial based on our disposition of issue one, we do not need to consider whether the trial court's error was harmless.  Instead, we offer the analysis of Appellant's second issue as guidance for the trial court upon remand so that it does not make the same mistake for a second time.

[8] Based on our disposition, we do not need to reach Appellant's third issue challenging the weight of the evidence or fourth issue challenging the discretionary aspects of sentencing.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/19/2020